## Case No. 4,663.

FARMERS' LOAN & TRUST CO. v. CENTRAL RAILROAD OF IOWA.

[4 Dill. 533;[1] 11 West. Jur. 428; 23 Int. Rev. Rec. 242; 5 Cent. Law J. 56.]

Circuit Court, D. Iowa. March 12, 1877.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

H. B. Turner, for the trustee.

R. L. Ashhurst and C. C. Cole, for a committee of bondholders.

LOVE, District Judge. I have gone carefully over the papers, and given them the best consideration I could. I proceed to give my impressions as to the disposition which ought to be made of the case: I have a very decided opinion that the court ought not, at present, and upon the showing made by the majority of the bondholders, to order the trustee to execute the decree.

The case is a peculiar one. The circuit court did not enter the decree upon any independent consideration of the rights and equities of the parties, but solely upon the assumption that the parties to be affected by it assented to the provisions of the decree. Now, it turns out that this assumption was not well founded, so far as the appellants (Cowdrey et al.), who are now resisting the execution, are concerned. The appellants are consequently seeking to get the decree reversed. It must be borne in mind that they have never yet had the judgment of any court upon their rights and equities under the mortgage. If the court had passed its independent judgment upon their rights and equities, and had made a decree disposing of them accordingly, and if they had failed to supersede the decree, I do not see that they would have any reason to complain, even though they could not, in the event of a reversal, be placed, as to their rights under the mortgage, in statu quo. But in the absence of any real adjudication by the court, and by virtue of a consent decree, to which they were not parties, to have the property in which they are interested disposed of, so that in the event of a reversal they cannot be awarded the very relief to which they would be entitled by the terms of the mortgage, would seem to me not at all in accordance with the principles of equity.

Again, it is impossible for us to know what the decision of the supreme court will be, and what complications may consequently arise from the execution of the decree in the meantime. Will the supreme court dispose of the case with reference to the fact that the decree below has been executed, and the trust property placed beyond judicial control; or will it determine the controversy with reference to the state of the case and property at the time when the decree was entered below? I confess I do not see the way clear in the future, if the status quo of the trust property be changed, as required by the terms of the decree. On the contrary, it appears to me that no complications can possibly arise if the decree be not executed. Nor can I see clearly that any special injury will result to the parties in interest by reason of the delay. If the majority feel aggrieved by the refusal of the court to grant their present motion, I suppose they have their remedy; they can apply for a mandamus, and thus submit their case to the judgment of the supreme court, and if it be a matter of right in them, and not of discretion in the circuit court, they can thus obtain redress. If the circuit judge feels any embarrassment in regard to the matter, he might consider the propriety of reserving his determination till the regular term in May.

The circuit judge concurred, and annexed to the above opinion of Judge LOVE the following:

DILLON, Circuit Judge. 1. I am of opinion that individual bondholders, not parties to the record, and who are represented by the trustee, have no legal right to demand that the trustee shall order a sale under the decree and have the same executed, if the trustee is of opinion that the interest of all the bondholders would be best subserved by not having a sale made pending the appeal.

2. The question whether a sale should be made under the decree pending the appeal is one which primarily belongs to the trustee to determine, having in view the interest of all the cestuis que trustent. That question the trustee, by the petition, refers to the court. Under the circumstances, I am of opinion the court ought not to order the trustee to cause a sale to be made at the present time; such is also the opinion of Judge LOVE, hereto annexed, and in which I concur. An order can be made on the foregoing petitions in conformity with these views, and the special master will cause the order to be entered of record, and the respective counsel to be notified hereof. We decide the matter now, so as to enable the parties who desire a sale to apply to the supreme court, at this term, for a mandamus to compel the execution of this decree, if they shall so desire.

Afterward, and at the May term, 1877, the application was renewed by Alexander and others, original complainants and bondholders, and the following opinion was announced, reported by a short-hand reporter:

C. C. Cole, for the application.

Grant & Smith, contra.

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge, in orally denying the application to compel the trustee to sell the road under the decree, said:

Mr. Alexander and certain other bondholders apply here for an order on the trustee, the complainant in this case, in whose favor a decree was rendered, directing the trustee to sell the road under the decree of the court heretofore rendered. That matter has been very fully argued in favor of the application by Judge Cole, and the trustee appears by its attorneys of record and submits the matter on its part for the consideration of the court. This is in reality a renewal of a similar application which was made and considered by Judge LOVE and myself last winter, at chambers. At that time we denied the application, and decided it promptly, so as to enable the parties, if dissatisfied with our judgment in the premises, to apply to the supreme court for a mandamus directing us to execute that decree. The facts are these, in brief: Originally, Mr. Alexander and certain other bondholders commenced this action of foreclosure in their own names, making the trustee a party defendant, on the ground that the trustee had improperly refused to execute the trust. Subsequently the trustee came in and was made complainant, and the case of the individual bondholders was consolidated with that one, and thereafter the cause was prosecuted in the name of the trustee, taking no notice of the rights of Mr. Alexander, or the other individual bondholders.

Under a railway mortgage, where it is contemplated that bonds to a large number will be executed and negotiated, and where the holders of these bonds may be scattered over the whole face of the earth, it becomes very important to appoint a trustee, and the trust deed for that purpose usually prescribes the powers and duties of the trustee; and it is so in this case. Now, all the purchasers of these bonds must take under the rights which that instrument gives them; and the effect of this is that the trustee, while acting in the line of his duty, and within the scope of his powers, is a representative of all the bondholders, so that when the trustee in this case procured a decree of foreclosure, he procured it for the equal benefit of all. The court cannot entertain the application of specific bondholders, except where they come in and represent and make a case, showing that the trustee is guilty of a breach of trust or neglect of duty. Such proceedings were had that the court ordered a decree of foreclosure for the trustee, for the benefit of all the bondholders. Subsequently two or three of the bondholders—Sage, Cowdrey, and Buell—were allowed an appeal to the supreme court, and the appeal was directed by Mr. Justice Miller to operate as a supersedeas. 93 U. S. 412.

Afterwards, in the supreme court, the supersedeas was set aside, but the appeal was entertained, and is still pending in that court. While that appeal is pending, an application was made to order the special master to make a sale of the road, which was considered by Judge LOVE and myself. That application was refused. The parties went before the supreme court, on an application for a mandamus to compel us to execute the decree by a sale of the road under it, and that application was refused. We have not seen the opinion of the supreme court, if one was written, but Judge Miller states to us distinctly that it was refused, on the ground that this trustee was the representative of all the bondholders—that it was for him to determine whether the best interests of all concerned would be promoted by a sale of the road, and that no single bondholder nor any number of individual bondholders, had a legal right to insist upon an execution of the decree. And he says, furthermore, that the supreme court is very strongly of opinion that the individual bondholders ought not to be allowed to become parties to the record in railway foreclosure cases, unless upon strong and clear reasons, for good cause. Their number is legion. One may may want this done, another may want that done; and such is the case here. The majority of the bondholders want a sale of the road, but a very large number in amount oppose that sale. Now, it is for the trustee to determine whether that sale ought to be made. And Judge Miller also states that the supreme court is of opinion that, if these bondholders do not like the trustee, and are dissatisfied, their remedy is to apply to have him removed, under the provision in that behalf contained in the trust deed, and get a trustee to carry out their wishes, if they can.

So far as this case is concerned, we think that what the supreme court has decided is conclusive against the legal right of these parties now applying to have this decree executed; but at the same time we wish to say, for the guidance of the trustee, that there is no restraint in the decree, or in what has been decided in either court against its execution, and that the appeal does not supersede it, and that it is at perfect liberty, whenever it sees fit, to execute that decree. As far as the court is concerned, considering the trouble this road gives us by reason of the controversies and factions among the bondholders, we would be glad if the trustee could see its way clear to execute that decree, and would be glad if it could get the road out of court, and into the hands of parties who could control it to their satisfaction.

As far as the suggestion is made that the trustee incurs any personal liability in so doing, we think there is nothing in that. It comes to this—and we want the trustee to understand that—as far as we can see, it incurs no personal liability by executing the

decree. There is simply this question for the trustee to determine, viz., whether the interests of all the cestuis que trustent, or bondholders, would be best promoted by now executing the decree, or by allowing it to stand until the determination of the appeal.

We are, therefore, obliged, in conformity with what we heretofore decided, and for the reasons here stated, and in conformity with the opinion of the supreme court, as we understand it through Mr. Justice Miller, to refuse this application. I have directed the short-hand reporter to take down the substance of what I have said, and send it to the trustee.

There is an application here by certain bondholders to remove the trustee, and the court will entertain that and consider it, if they take the steps necessary to that end.