W B. Ellison, of New York City, for appellants.
H. A. Friedman, of New York City, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Shearn, J., and matter remitted to referee, to proceed with accounting under interlocutory judgment. Order filed.

SCOTT, J., dissents.

---

WATSON v. CHICAGO, R. I. & P. R. CO.   (No. 7829.)

(Supreme Court, Appellate Division, First Department.   November 12, 1915.)

1. RAILROADS ⊙⇒166—COUPON BONDS—REFERENCE TO TRUST DEED—EFFECT.
A coupon bond, by declaring it one of a series issued by a railroad company, all equally secured by a certain trust agreement, and referring to said agreement for the right of the bondholders, makes the provisions of the trust deed an essential part of the contract between the bondholder and his obligor, and the trust deed, bond, and coupon must be examined together, to determine the intent and meaning of the contract thereby made.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 516–518; Dec. Dig. ⊙⇒166.]

2. RAILROADS ⊙⇒166—COUPON BONDS—PREMATURE ACTION BY HOLDER—EFFECT OF TRUST DEED.
A provision in a trust deed, securing railroad bonds, authorizing the trustee to declare the principal due for default in interest, cannot avail the holder of a bond to sue on it before it is by its terms due; the deed denying the holder of a bond right to institute action on or in respect to it, or for any remedy under or on it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 516–518; Dec. Dig. ⊙⇒166.]

3. RAILROADS ⊙⇒166—COUPON BONDS—ACTION BY HOLDER—EFFECT OF TRUST DEED.
The provision of a trust deed, securing railroad bonds, that "all remedies conferred by" it "shall be deemed cumulative, and not exclusive," and shall not deprive the trustee of any other remedy, confers no individual right of action on a bondholder.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 516–518; Dec. Dig. ⊙⇒166.]

4. JUDGMENT ⊙⇒691—RES JUDICATA—TRUSTEE AND BENEFICIARY.
The decree in a suit by the trustee to foreclose a trust deed securing railroad bonds, which is not only a judgment in rem, but in personam, is res judicata as to the bondholders; Code Civ. Proc. § 449, authorizing the trustee of an express trust to sue without joining the beneficiaries.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1214; Dec. Dig. ⊙⇒691.]

5. JUDGMENT ⊙⇒715—BONDS—ACTION ON COUPON.
Coupons to a railroad bond in the hands of a bondholder give him no right of action; the trustee under the trust deed having foreclosed for interest as well as principal.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1244–1246; Dec. Dig. ⊙⇒715.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Appellate Term, First Department.

Action by Marie Louise H. Watson against the Chicago, Rock Island & Pacific Railroad Company. From the determination of the Appellate Term (90 Misc. Rep. 388, 153 N. Y. Supp. 293), reversing a judgment of the City Court for plaintiff for $1,045, directed by the court, and dismissing the complaint, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Roger Foster, of New York City, for appellant.

White & Case, of New York City (Gervase Green, of New York City, of counsel), for respondent.

CLARKE, J. Plaintiff sued upon a $1,000 coupon bond issued by the defendant. This bond was one of a series of $71,353,000, issued under a trust agreement dated August 1, 1902, between the defendant, the Chicago, Rock Island & Pacific Railroad Company, and the Central Trust Company of New York, as trustee. Default in payment of interest on said bonds having occurred, the Central Trust Company, as trustee, in accordance with the provisions and authority conferred upon it by the trust agreement, declared all of the outstanding bonds due and payable, and brought an action of foreclosure in the United States District Court for the Southern District of New York. A decree of foreclosure was entered in said court on the 10th day of October, 1914. The decree declared all of the $71,353,000 bonds due and payable, and directed payment into court of said amount, together with interest thereon from May 1, 1914, the date of the default in the payment of the interest coupon, at 4 per cent., $1,292,281.31 ; installment of interest on said bonds maturing May 1, 1914, $1,427,060; interest thereon from May 1, 1914, to the date of the decree at 4 per cent., $25,851.58—making a total of $74,098,192.89, and, in default of payment for 10 days from the entry of said decree, directed that the collateral pledged under said trust agreement should be sold, and the proceeds applied to the payment of expenses, and the residue to the payment of the bonds and the matured and unpaid coupons adjudged to be secured by said trust agreement, and, if the residue was not sufficient to pay in full, that it should be distributed among the holders of the bonds and matured and unpaid coupons ratably, and, in case the proceeds should not be sufficient to pay in full the amount found to be due and unpaid, together with interest thereon, that complainant should have judgment against the defendant for such deficiency and have execution therefor.

After all the foregoing proceedings had been had, and after the said decree authorizing said sale and the entry of the deficiency judgment had been duly entered, plaintiff herein commenced this action in the City Court to recover judgment upon a single bond. By its answer the defendant set up that under section 1 of article 9 of the trust agreement plaintiff was not entitled to bring this action. As a separate defense, that the bond and coupon sued on were issued under a trust agreement; that the trustee had commenced an action in the United States District Court to foreclose said trust agreement secur-

ing the bond and coupon held by the plaintiff, which was brought under said agreement in behalf of and for the benefit of this plaintiff and other bondholders, and that judgment had been entered for the principal of said bond and the face of said coupon upon her behalf, with a direction for the entry of a deficiency judgment, and that no other and separate action could be commenced and maintained by this plaintiff thereon. Upon the trial in the City Court plaintiff proved her bond and that none of the principal or the interest due on May 1, 1914, had been paid. The defendant offered in evidence the trust agreement and a copy of the decree of the United States District Court entered October 10, 1914. Both sides then moved for the direction of a verdict, and by direction of the court the jury found a verdict for the plaintiff for $1,045. Upon appeal to the Appellate Term this judgment was reversed, and the complaint dismissed, from which determination the plaintiff appeals.

The bond provided that the defendant would pay to the bearer $1,000 in gold coin on the 1st of November, A. D. 2002, and interest thereon from the 1st day of November, A. D. 1902, at the rate of 4 per centum per annum, semiannually on the 1st days of May and November in each year, upon presentation and surrender of the coupons thereto annexed as they severally matured. It provided further:

"This bond is one of a series of coupon bonds and registered bonds issued and to be issued by the railroad company in partial payment of the purchase price of shares of the capital stock of the Chicago, Rock Island & Pacific Railway Company. * * * All of said bonds have been issued or are to be issued under, and are equally secured by, a trust agreement dated August 1, 1902, between the railroad company and Central Trust Company of New York as trustee. For the nature and extent of the security, the rights of the holders of said bonds, and the terms and conditions upon which said bonds may be issued and are secured, reference is made to said trust agreement."

There was a coupon annexed:

"On the 1st day of May, 1914, Chicago, Rock Island & Pacific Railroad Company will pay to bearer at its office or agency in the city of New York, on surrender of this coupon, twenty dollars in United States gold coin, being six months' interest then due on its four per cent. gold bond of 2002."

[1] It is clear that by the clause in the bond quoted supra the provisions of the trust deed are made an essential part of the contract between the bondholder and his obligor, and the three instruments, the trust deed, the bond, and the coupon, must be examined together for the purpose of discovering the intent and meaning of the contract thereby made. McClelland v. Norfolk Southern R. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801. The trust agreement set forth the form of the bonds, and recited that the railroad company had transferred all shares of the capital stock of the Rock Island Railway Company owned by it to the trust company, to have and to hold in trust for the common and equal use, benefit, and security of all holders of any of said bonds or coupons, "subject to the terms, provisions, and stipulations in the said bonds contained, and for the uses and purposes and upon and subject to the terms,

conditions, provisos, and agreements hereinafter expressed and declared. * * *

"Article 5—Sec. 2. If one or more of the following events, hereinafter called the events of default, shall happen; that is to say: (a) Default shall be made in the payment of any installment of interest on any of the said bonds when and as the same shall become payable as therein and herein expressed, and such default in the payment of any installment of interest shall continue for the space of ninety days, or default shall be made in the payment of the principal of any of the said bonds when the same shall become due and payable, whether at maturity or by declaration or otherwise, * * * the trustee may, in its discretion, and upon the written request of the holders of a majority in amount of the bonds hereby secured and then outstanding shall, by notice in writing delivered to the railroad company, declare the principal of all of said bonds then outstanding to be due and payable immediately; and upon any such declaration, the same shall become and be immediately due and payable, anything in this trust agreement or in said bonds contained to the contrary notwithstanding"

—subject to the condition, however, that in case all arrears of interest should be paid before any sale of the secured stock should have been made the holders of a majority in amount of the bonds by written notice to the trustee might waive such default and its consequences. By section 3, in case of the happening of any event of default, the trustee was empowered for the benefit of the holders of said bonds to receive and collect all dividends that shall become payable upon the stock of the Rock Island Company, and apply the same, in case the principal of the said bonds shall not have become due, to the payment of the interest in default, ratably to the persons entitled thereto, without discrimination or preference; in case the principal of the said bonds shall have become due by declaration or otherwise, first to the payment of the accrued interest, and next to the payment of the principal of all of said bonds, ratably to the persons entitled thereto without any discrimination or preference. By section 5, if one or more of the events of default shall happen, the trustee shall in its discretion be forthwith entitled and shall forthwith proceed to sell and convert into money, singly or collectively, the securities constituting the trust estate.

"Sec. 9. The trustee, however, instead of exercising the power of sale herein conferred upon it, may, in its discretion, and shall, on the request in writing of the holders of a majority in amount of the bonds hereby secured and then outstanding, proceed by a suit or suits at law or in equity, as the trustee may be advised by counsel, to enforce the payment of the said bonds and coupons and to foreclose this trust agreement and to sell the securities constituting the trust estate under the judgment or decree of a court or courts of competent jurisdiction.

"Sec. 10. The trustee shall, for the purpose of this trust agreement, be considered and held to be the legal owner and holder of the stock pledged hereunder, and shall have and may exercise, for the purposes of this trust agreement, and as herein provided, all the rights of such holder or owner. All remedies conferred by this trust agreement shall be deemed cumulative, and not exclusive, and shall not be deemed to deprive the trustee of any legal or equitable remedy by judicial proceedings appropriate to enforce the conditions, covenants, and agreements of this trust agreement or otherwise."

By section 11, in case of any sale of the trust estate, whether under the power of sale thereby granted or pursuant to judicial proceedings,

the purchase money was to be applied: (a) To the payment of the costs and expenses incurred by the trustee; (b) any surplus then remaining to the payment of the whole amount owing and unpaid upon the principal and interest of the said bonds, and in case such proceeds shall be insufficient to pay in full the amount so due and unpaid upon the said bonds, then to the payment of such principal and interest, ratably, without preference or priority of principal over interest or of interest over principal, or of any installment of interest over any other installment of interest; (c) any surplus then remaining to the railroad company, its successors or assigns, or to whomsoever may be lawfully entitled to receive the same. By section 13, holders of 60 per cent. in amount of the bonds, if they so elected in writing, had the right to direct the method and place of conducting any and all proceedings for any sale of the trust estate, or for the foreclosure of this trust agreement, or any other action or proceeding thereunder.

"Sec. 14. In case of the happening of one or more of the events of default, the railroad company, upon demand of the trustee, will pay to the trustee, for the benefit of the holders of the said bonds and coupons then outstanding, the whole amount due and payable on all such bonds and coupons for principal, or interest, or both, as the case may be, with interest at the rate of 4 per cent. per annum upon the overdue principal and installments of interest; and, in case the railroad company shall fail to pay the same forthwith upon such demand, the trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid. * * * And in case of a sale of the trust estate and of the application of the proceeds of sale to the payment of indebtedness represented by the said bonds and coupons, the trustee in its own name and as trustee of an express trust shall be entitled to receive and enforce payment of any and all deficiency or amounts then due and unpaid upon any or all of the said bonds then outstanding, for the benefit of the holders thereof, and shall be entitled to recover judgment for any portion of such indebtedness remaining unpaid, with interest as aforesaid."

By article 6, the railroad company covenanted with the trustee to pay the principal and interest to every holder of the bonds at the dates and in the manner mentioned.

"Article 9—Sec. 1. No holder of any bond or coupon issued hereunder shall have the right to institute any suit, action or proceeding at law or in equity upon or in respect of this trust agreement, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for any other remedy under or upon this trust agreement, unless such holder shall previously have given to the trustee written notice of any existing default and of the continuance thereof, as hereinbefore provided; nor unless, also, the holders of 5 per cent. in amount of the said bonds then outstanding shall have made written request upon the trustee and shall have afforded to it reasonable opportunity to proceed itself to exercise the powers hereinbefore granted, or to institute such action, suit, or proceeding in its own name after such right of action shall have accrued to the trustee; nor unless such holder or holders shall have offered to the trustee adequate security and indemnity against the costs, expenses, and liabilities to be incurred in or by reason of such action, suit, or proceeding; and such notification, request, and offer of indemnity are hereby declared in every such case, at the option of the trustee, to be conditions precedent to the execution of the powers and trusts of this trust agreement and to any action or cause of action for foreclosure for the appointment of a receiver, or for any other remedy hereunder—it being intended that no one or more holders of said bonds or coupons shall have

any right in any manner whatever to affect, disturb, or prejudice the lien of this trust agreement by his or their action, or to enforce any right thereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had, and maintained in the manner herein provided and for the equal benefit of all holders of said bonds and coupons; but the foregoing provisions of this section are intended only for the protection of the trustee, and shall not be construed to affect any discretion or power by any provision of this trust agreement given to the trustee to determine whether or not it shall take action in respect of any default, without such notice or request from bondholders, or to affect any other discretion or power given to the trustee."

[2] The plaintiff claims that it has a common-law right to sue upon the bond as an obligation to pay a fixed amount of money. The answer is that the obligation was to pay on the 1st day of November, 2002, which date has not arrived. So the plaintiff is driven to the trust agreement, and therein, she says, there is a provision upon default in payment of an interest installment for declaring the principal of all outstanding bonds to be due and payable immediately; that there was such default; that the trustee declared the principal to be due; that such declaration was for her benefit, and she is therefore entitled to her action. If she goes to the agreement, she is bound by all the relevant parts thereof; but it is therein provided that the trustee may in its discretion, upon the written request of the holders of a majority amount of the bonds make such declaration. And the power was given to it to proceed to sell and convert into money the securities constituting the trust estate, or to proceed by a suit or suits at law or in equity to enforce the payment of the said bonds and coupons, or to foreclose the trust agreement and sell the securities, and it was expressly provided in section 1 of article 9, quoted supra, that:

"No holder of any bond or coupon issued hereunder shall have the right to institute any suit, action, or proceeding at law or in equity upon or in respect of this trust agreement, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for any other remedy under or upon this trust agreement; * * * it being intended that no one or more holders of said bonds or coupons shall have any right in any manner whatever to affect, disturb, or prejudice the lien of this trust agreement by his or their action, or to enforce any right thereunder, except in the manner herein provided."

[3] But she says that in article 5 it is provided that:

"All remedies conferred by this trust agreement shall be deemed cumulative, and not exclusive."

Article 5, referred to, provides what shall be done by the trustee in case of default. There is not a word in it giving independent power to the bondholders. The phrase relied on is found in section 10, and the whole clause is as follows:

"The trustee shall, for the purposes of this trust agreement, be considered and held to be the legal owner and holder of the stock pledged hereunder, and shall have and may exercise, for the purposes of this trust agreement, and as herein provided, all the rights of such holder or owner. All remedies conferred by this trust agreement shall be deemed cumulative, and not exclusive, and shall not be deemed to deprive the trustee of any legal or equitable remedy by judicial proceedings appropriate to enforce the conditions, covenants, and agreements of this trust agreement or otherwise."

To read the last clause of that paragraph as an independent provision giving the bondholders individual rights, when their trustee has acted in their interest and for their benefit, is to tear it bodily from its context, and involves a complete misconception of the language, intent, and purpose thereof. I am quite satisfied that, the trustee having acted, no independent action by a bondholder upon his bond can be maintained. The provision for accelerating the time of payment upon default contained in the trust deed prescribed precisely what should be done. That course has been followed, and a judgment has been entered by the plaintiff's trustee, which includes this obligation.

In Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801, the bonds were secured by a trust mortgage and the principal of the bonds was due in 1912. The action was brought in 1891. The bonds contained a provision that in case of default in the payment of the interest coupons attached "the principal sum of this bond shall become due in the manner and with the effect provided in the trust deed or mortgage." The mortgage provided that, in case of such default and its continuance for six months after demand, the principal should become immediately due and payable, and the trustee, upon the written request of the holders of a majority of said bonds then outstanding, should proceed to collect both the principal and interest of all said bonds by foreclosure and sale of the property covered thereby. The court said:

"This clause plainly limits the effect of the provision making the principal of the bonds due upon the failure to pay semiannual interest, and it prescribes the manner in which such a breach of the contract shall be made available. It authorizes the trustee, upon the request of a majority of the bondholders, to foreclose the mortgage and distribute the proceeds realized thereby equally among the bondholders. By prescribing the effect which the clause shall have on the contract and the particular manner in which a default in the payment of interest shall be availed of, it impliedly excludes all other methods, and confines the bondholder to the remedies expressly authorized. * * * This prevents individual bondholders from pursuing an individual course of action and thus harassing their common debtor and jeopardizing the fund provided for the common benefit. The manifest equity and justice of such a proceeding indicate the intent of the parties in drafting the form of the bond. The plaintiff's right of action is based solely upon the language of his contract, and if he does not make out a right to recover by virtue of its terms his action must necessarily fail. We think that the reasonable construction of the contract requires us to hold that the principal sum of the mortgage debt, upon the failure to pay interest thereon, was not intended to be made payable, except in the manner specifically provided by the terms of the mortgage."

In American National Bank v. American Wood Paper Co., 19 R. I. 149, 32 Atl. 305, 29 L. R. A. 103, 61 Am. St. Rep. 746, the Supreme Court of Rhode Island said:

"The bonds do not make the terms of the mortgage a part of the contract. They simply recite that they are secured by a mortgage. Turning to the mortgage, we find that, in case of default, one-third of the bondholders in amount may require the trustee to sell the property; and in the same clause occurs the provision that the bonds shall forthwith become due and payable upon the default. We think that this is a provision only for the purposes of foreclosure by entry or sale. * * * It is a provision for a special purpose, and not intended to give a right of action upon default, independently of foreclosure proceedings. Such is the construction given to similar provisions in Batch-

elder v. Water Co., 131 N. Y. 42 [29 N. E. 801]; White v. Miller, 52 Minn. 367 [54 N. W. 736, 19 L. R. A. 673]; McClelland v. Bishop, 42 Ohio St. 113; Mallory v. Railroad Co., 35 N. Y. Super. Ct. 174."

[4] We think that the decree of the United States District Court is res adjudicata. The trustee, the plaintiff in that action, stood in the place and stead of all the bondholders. In Farmers' Loan & Trust Co. v. Central Railroad of Iowa, 8 Fed. Cas. 1037, Judge Dillon said:

"Under a railway mortgage, where it is contemplated that bonds to a large number will be executed and negotiated, and where the holders of these bonds may be scattered over the whole face of the earth, it becomes very important to appoint a trustee, and the trust deed for that purpose usually prescribes the powers and duties of the trustee. * * * Now, all the purchasers of these bonds must take under the rights which that instrument gives them; and the effect of this is that the trustee, while acting in the line of his duty and within the scope of his powers, is a representative of all the bondholders."

· Section 449 of the Code of Civil Procedure provides that the trustee of an express trust may sue without joining with him those for whose benefit the action is prosecuted; and it is expressly provided in the trust agreement at bar that the trustee, in his own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid. In Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. 106, 31 L. Ed. 132, Chief Justice Waite said:

"All the rights the bondholders have or ever had in the mortgage, legal or equitable, they got through the trust company, to which the conveyance was made for their security. As bondholders claiming under the mortgage, they can have no interest in the security except that which the trustee holds and represents. If the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actual parties, binds them [citing cases]. Whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them. This is the undoubted rule."

The decree of the federal court was not only a judgment in rem against the mortgaged property, but it was a judgment in personam against the defendant company. The trust agreement not only contained an express covenant to pay the whole of the debt represented by the outstanding bonds, but also expressly authorized the trustee both to foreclose the lien and to enforce payment of the bonds, and, in addition thereto, it contains an express provision for the enforcement of any deficiency which might remain after the sale of the mortgaged property. The decree entered provided for ascertaining the deficiency, and the entering of judgment therefor, and the issuance of execution for its enforcement.

[5] The plaintiff claims that in any event she is entitled to judgment for the amount of the $20 coupon due and unpaid at the time of the commencement of her action. In her complaint she alleges that:

"Annexed to said bond is a certain instrument designated as a coupon, a copy of which is as follows."

In Bailey v. County of Buchanan, 115 N. Y. 297, 22 N. E. 155, 6 L. R. A. 562, Earl, J., said:

"It is true that past-due coupons, payable to bearer, when detached from the bonds, are for many purposes independent, separate instruments. They

may be negotiated, and may be sued upon by the holder without the production of the bonds [citing cases]. But the coupons, nevertheless, always have some relation to the bonds. Their force and effect and character may be determined by reference to the bonds. They are secured by the same mortgage, and, although unsealed, are specialties, like the bonds, and are governed by the same statute of limitations which is applicable to the bonds. Until negotiated or used in some way they serve no independent purpose; and while they are in the hands of the holder they remain mere incidents of the bonds, and have no greater or other force or effect than the stipulation for the payment of interest contained in the bonds; and while they remain in the ownership and possession of the owner and holder of the bonds, it can make no difference whether they are attached to or detached from the bonds, as they are then mere evidences of the indebtedness for the interest stipulated in the bonds."

The trust agreement provides that the trustee may proceed by a suit or suits at law or in equity to enforce the payment of said bonds *and coupons.* If the trustee sells without suit, the surplus, after costs and charges, is to be applied to the whole amount owing and unpaid upon the principal and interest of the said bonds, with interest on the overdue installments of interest. It is provided that, in case of the happening of one or more of the events of default, the railroad company, upon demand of the trustee, will pay to the trustee, for the benefit of the holders of the said bonds *and coupons* then outstanding, the whole amount due and payable on all such bonds *and coupons,* and in case the railroad company shall fail to pay the same forthwith upon such demand the trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid.

The judgment of the United States District Court in evidence expressly enumerates, as one of the items of the full amount found due, $1,427,060, "installment of interest on said bonds maturing May 1, 1914." This is the precise amount which the plaintiff alleges in her complaint to be the installment of interest due on that day in respect to which default was made, the amount of her coupon being included therein. It also enumerates "interest thereon from May 1, 1914, to the date of the decree at 4 per cent., $25,851.58," and the judgment further provides:

"The residue of the funds received from said sale * * * shall be applied to the payment of the four per cent. gold bonds and the *matured and unpaid coupons* hereby adjudged to be secured by said trust agreement, and interest thereon from the date of this decree to the date fixed for the payment thereof."

If the amount was insufficient to pay in full, it provided that the residue be distributed among the holders of said bonds and coupons ratably. So that her trustee, acting for and on her behalf, has already obtained a judgment of record for the amount of her coupon, for which she claims she is entitled to another judgment in this court. She may not have two judgments for the same debt against the same defendant.

The determination of the Appellate Term, reversing the judgment of the City Court and dismissing the complaint, should be affirmed, with costs and disbursements to the respondent.

LAUGHLIN, SCOTT, and DOWLING, JJ., concur.

INGRAHAM, P. J.  I fully concur in the opinion of my Brother CLARKE in affirming this judgment.  By the express provision of the bond, reference is made to the trust agreement for the nature and extent of the security, the rights of the holders of said bonds, and the terms and conditions upon which said bonds may be issued and secured.  By reference to the trust agreement, most careful provision is made for the enforcement of the bonds and the application of the security given to the trustee for the benefit of bondholders, and upon the trustee is placed the burden of enforcing the bonds, both in relation to the application of the property to secure their payment and for obtaining a judgment against the obligor.  The pervading intent is that the enforcement of the obligation of the obligor was for the equal benefit of all the bondholders, so that no one bondholder should obtain a preference by any proceeding at law or equity over any other bondholder.  Thus it is expressly provided "that all proceedings hereunder shall be instituted, had, and maintained in the manner herein provided and for the equal benefit of all the holders of said bonds and coupons," thus subordinating the right of any one bondholder to an action or proceeding on behalf of the trustee for the benefit of all bondholders equally.  To allow a single bondholder to maintain an action, either at law or equity, by which he could get a judgment against the obligor, and then proceed by way of creditors' bill or any other method to secure to himself a lien or advantage which would not enure to the benefit of all the bondholders equally, would, it seems to me, be a violation of the express agreement of each bondholder under the bond and the trust agreement.

The trustee, on behalf of all the bondholders, has commenced a proper action to realize upon the securities and property set apart for the security of the bonds, and has also obtained a decree which entitles the trustee to a personal judgment against the obligor, and under which it will be able to secure satisfaction out of any other property of the obligor not specifically pledged to secure the payment of the bonds.  To allow individual bondholders to obtain an individual lien or right to such property would, I think, be a violation of the expressed intent of this trust agreement, which, as before stated, was based upon the agreement, that bound all the individual bondholders, that the obligation created by the bond as well as the pledge of property to the trustee should be for the equal benefit of all the holders of bonds and coupons.

It is not necessary in this case to determine what right a bona fide holder for value of coupons detached from the bonds would have as against the obligor.  So long as the coupons are in the hands of the holders of the bonds:

"Their force and effect and character may be determined by reference to the bonds. * * * Until negotiated or used in some way, they serve no independent purpose; and while they are in the hands of the holder they remain mere incidents of the bonds, and have no greater or other force or effect than the stipulation for the payment of interest contained in the bonds." Bailey v. County of Buchanan, 115 N. Y. 297, 22 N. E. 155, 6 L. R. A. 562.

I therefore concur in the affirmance of the determination appealed from.