### HAMMER v. ALASKA–EBNER GOLD MINES CO. et al. (BEHRENDS, Intervener).

(First Division. Juneau. September 10, 1919.)

No. 928–A.

1. Receivers ⊗209—Receivers—Trusts—Powers—Mortgages.

The Alaska-Ebner Gold Mines Company had large mining properties near Juneau, Alaska, and an authorized bond issue thereon in New York. Thereafter a general receiver was appointed for the company's property under its mortgage in New York, and on application an ancillary receiver was also appoint-

⊗See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·ed in Alaska, who took charge of its property here. The latter, having administered his trust, was about to be discharged, when intervener filed a petition in this court, alleging that he was an individual bondholder of the company, that the Alaska receiver had in his possession a large amount of valuable assets belonging to the company, and was about to dispose of same to others than the company, that if he did so intervener would lose his claim, and prayed that his claim as such individual bondholder be allowed and paid out of the assets in Alaska. On hearing, it was shown the New York trustees had sold all the property of the company for $225,000, and had taken a deficiency judgment for $1,657,799.85 under the terms of the mortgage trust, and the New York law permitting that course. *Held*, the intervener had no right to maintain a separate suit in Alaska to recover on his individual bonds, and that he is bound by the judgment rendered at the suit of the trustees under the general mortgage deed of trust in New York.

**2. Judgment ⬤══678(3)—Mortgages—Trusts.**

An individual bondholder, suing in Alaska, is concluded by a judgment obtained by the trustee for all the bondholders under the trust in New York. While the court in Alaska is not bound to take notice of the judgment in the other court judicially, yet when the matter is pleaded in due time, and it is made to appear that a judgment on the same cause of action has been recovered, and is in full force and effect, that judgment must be held to merge the evidence of the debt, whether that evidence be parol, or written, in the judgment first recovered.

Originally the above-numbered cause was an application by Valdemar T. Hammer, above-named plaintiff, that a receiver of Alaska-Ebner Gold Mines Company, above-named defendant, be appointed by this court as ancillary to an appointment of general receivers of said company which had been made by the United States District Court for the Southern District of New York.

The said application was granted, and the ancillary receiver so appointed took possession of all the property of defendant corporation in Alaska. The said ancillary receiver, having administered his trust, was about to be discharged when, on, to wit, the 28th day of July, 1914, B. M. Behrends, hereinafter called the intervener, filed his petition herein, wherein he alleged that he was the owner of a large amount of the bonds of said defendant company, and that same were unpaid, and that the said ancillary receiver

had in his possession a large amount of valuable assets, and was about to dispose of them to others than the defendant company without paying the said intervener's claim, and that if this should be allowed to be done the intervener would lose his claim. The intervener prayed that his claim be allowed and that the said receiver be directed to pay it out of the funds or property in his hands, and for other and further relief.

Whereupon plaintiff, defendant, intervener, and certain others entered into and filed herein a stipulation containing the following:

"Whereas, it is the intention of this stipulation to make provision for the disposition of the said action brought by the said Behrends in such manner as will be sufficient in law to permit the discharge of said Mackay as receiver, without in any way affecting the rights, or any of them, of the said Behrends, and to that end it is stipulated to file a good and sufficient bond conditioned to fully protect the said Behrends in and pay any final judgment which may be recovered by him upon the claim referred to in said complaint and petition of intervention:

"It is agreed that upon the filing of such bond for the sum of $27,000, made by or secured by the United States Fidelity & Guaranty Company, that the said Mackay may be discharged by the court.

"It is further stipulated that the said bond so filed shall provide for the payment and discharge of whatever final judgment may be recovered by the said Behrends without any necessity to sue upon the said bond but that said judgment shall be considered and rendered against the maker and surety of said bond in all respects, who, it is further stipulated, is to be regarded for all purposes as a party to this action, all questions of jurisdiction to dispose of this matter being hereby waived."

In accordance with said stipulation a bond was then signed and filed herein by the United States Fidelity & Surety Company, setting forth said stipulation in full and conditioned as follows:

"Now, therefore, the condition of this obligation is such that, if the obligor herein named does fully protect the said B. M. Behrends [mentioned in the said stipulation] in and pay any final judgment which may be recovered by him upon the claim referred to in said stipulation and in the complaint and petition of intervention mentioned in the said stipulation, and does fulfill and perform each and all of the conditions named in the said stipulation, then this obligation shall be null and void; otherwise, to remain in full force and effect, the said obligor hereby agreeing and stipulating that it is to be regarded for all purposes as a party to this action,

and the appearance of the said obligor being hereby entered in said action."

Whereupon the said United States Fidelity & Guaranty Company was formally made a party to this proceeding.

In due time the said Alaska-Ebner Gold Mines Company and said United States Fidelity & Guaranty Company filed their joint answer to intervener's complaint in intervention, in which answer they denied that the said receiver had any assets, and set up as an affirmative defense, in substance, that the claim of intervener as a bondholder had been merged in a certain decree which had been entered in a suit brought by the trustee on a certain mortgage or deed of trust executed by said Alaska-Ebner Gold Mines Company (or its predecessor, the California-Nevada Copper Company) to secure a certain issue of bonds, of which said issue of bonds the intervener's bonds formed a component part, which said decree, it was alleged, adjudged that all the property of defendant Alaska-Ebner Gold Mines Company was subject to the said mortgage and ordered same to be sold, and, further, that the trustee was entitled to a deficiency judgment.

To this answer the intervener filed a reply, denying possession by the trustee of authority to take a deficiency judgment, and affirmatively alleging that the Alaska-Ebner Gold Mines Company and the Surety Company were estopped to maintain that the intervener was not entitled to a judgment on his bonds. Said reply did not impugn the honesty, integrity, motives, or efficiency of the trustee.

On the pleadings thus formed the parties went to trial.

John R. Winn, of Juneau, for defendants.

L. P. Shackelford, of Tacoma, Wash., for intervener.

JENNINGS, District Judge. At the hearing there was evidence proving the ownership in the intervener of $22,-500 of the bonds and that said bonds were unpaid in whole or in part.

There was also a great amount of evidence as to the value of certain property claimed to have been in the possession of the ancillary receiver at the time of the intervention. Defendants seasonably objected to this line of testimony, and it was admitted subject to objection, to be considered later. The evidence so admitted induced evidence to the contrary,

and the whole evidence led to extended argument and elaborate briefs as to the jurisdiction of the New York court over property in this district and as to the powers and duties of an ancillary receiver. It seems to me that said evidence and argument could be material *only if* the true construction of the pleadings (as modified by the stipulation and bond) is that the bond takes the place of assets, if any such there are, in the hands of the receiver. I am unable to see that that is the purport or effect of the pleadings (as so modified).

The case is this: Certain parties wish a receiver to be discharged; others wish the contrary. All of said parties enter into a stipulation to the effect that the receiver may be discharged and that there shall be submitted the question as to whether or not a judgment should be rendered against the Alaska-Ebner Gold Mines Company on the bonds; the Guaranty Company agreeing to appear and be bound by the judgment, if any be rendered. Pursuant to said stipulation the bond is given, objections to the discharge of the receiver are withdrawn, and the Mining Company and the Guaranty Company file their answer, to which the intervener replies. The receiver being entirely out of the case, all questions as to his powers and functions and as to the existence or nonexistence of assets in his hands are beside the matter which is being inquired of. The bond is not (and was not to be) one conditioned to pay *if the claim was one properly to be submitted to the receiver and allowed by him or the court*, nor was it one conditioned to pay *if the receiver had assets*. On the contrary, it was conditioned to pay *if a judgment be recovered.* This condition implies that what is to be sought is a general legal judgment against Alaska-Ebner Gold Mines Company, and not simply the procuring of a pronouncement that a moral obligation exists, nor yet the procuring of a direction to the receiver to pay out of assets in his hands. If the liability on the bond was to be contingent upon the possession by the receiver of assets, and the allowance of the claim as a charge on the receiver to the extent of those assets, it is reasonable to suppose that the condition in the bond would have been so expressed. It is true that the possession by the ancillary receiver of assets is alleged in the complaint in intervention, but to treat such allegation as at all material after the filing of the stipulation and bond is to

completely ignore the purport and effect of those instruments; and while the answer denies the possession of assets by the receiver, and thus raises an issue on the allegation of possession, yet it is an immaterial issue, for the waiver of jurisdictional questions which is contained in the stipulation is in effect an agreement by all parties hereto that there may be thus grafted upon an equitable proceeding a purely legal action for the recovery of money from a party and his guarantor. All interested parties being before the court and consenting to this mode of trial, I can see no valid reason why the court should not try that issue and render judgment as in an independent action.

I think that the essence of this controversy is embraced in this question, to wit: Treating the matter as an action at law, is the intervener entitled to a judgment against the Alaska-Ebner Gold Mines Company? If the answer be in the affirmative, then the judgment should go against both defendants; if the answer be in the negative, then the intervener's complaint should be dismissed. I, therefore, do not agree with the contention that the bond takes the place of the property, if any, in the hands of the receiver, or that the matter before the court is at all connected with the receivership. Neither can I agree with the contention that the defendants are estopped by the stipulation and bond from asserting that intervener, having proved ownership of the unpaid bonds, is not entitled to a judgment; for by the stipulation and bond the obtaining of a judgment is the very contingency upon the happening of which (and only upon the happening of which) any liability at all arises, and the simple fact of the ownership of unpaid bonds does not of itself and at all events entitle the owner to a judgment.

*Is, then, the intervener entitled to a judgment?*

It is the contention of the defendants that the intervener is not entitled to judgment here because the trustee had already foreclosed the mortgage on behalf of all the bondholders and had obtained a deficiency judgment for them in the United States District Court in New York. On the other hand, the intervener contends that his claim on the bonds has not merged in the decree and judgment obtained by the trustee in the foreclosure suit in New York, for the reason, as alleged, that the trustee was a trustee only for the fore-

closure of the mortgage, and was not authorized by the deed of trust to take a deficiency judgment, and that, as the mortgaged property did not bring anything (substantially) and his bonds are unpaid, he is left free to enforce the personal liability of the maker of the bonds.

While it cannot be gainsaid that "it is only where the trustee acts for the bondholders within the scope of the powers conferred upon him by the deed of trust that his acts will bind the latter" (Moran v. Hagerman, 64 Fed. 500, 12 C. C. A. 239), yet it is likewise true that in the consideration of the extent of the trustee's powers "the bonds and deed of trust are to be read together as one contract" (3 Thompson on Corporations, p. 504).

Now, in the case at bar, the evidence shows that the bonds were payable to bearer at the company's office in New York, and that on the face of each bond it was declared that "this bond is entitled to the benefits and subject to the provisions" of the mortgage or deed of trust securing same, and that "the principal of said bond may become due in case of default as to interest or of sale under said mortgage as provided in said mortgage, to which reference is made for a complete statement," and that "this bond is one of a series of bonds described in the mortgage or deed of trust in this bond referred to."

The mortgage or deed of trust, made also in the city of New York, described the property mortgaged as being certain mining claims in California, all other real estate, all buildings, fixtures, machinery, tools, etc., all shares of stock and bonds of any corporation which the mortgagor "now owns or is entitled to, or which it shall hereafter own or be entitled to." It (the mortgage) contained an express promise "to pay the principal and interest on all bonds hereunder, according to the terms of said bonds *and of this indenture*" (article V, § 1). It provided that certain notices might be given to the trustee, and that the trustee should have access at all reasonable times to the transfer books; that the taxes would be kept paid up, and insurable property duly protected by policies to be delivered to the trustees, and that in default thereof the trustees might incur the necessary expenses for those purposes, charging them under the mortgage (article V, §§ 3, 4, 5); that if default made in payment

of principal or interest the trustees should be "entitled to receive the interest and dividends and to vote upon any of the collateral stock, or to give consent with respect to such stock as if they were the owners thereof" (article VI); that in case of default in payment of interest the trustees might, at their election, declare the principal of all the bonds to be due (article IX); that upon default of principal or interest the trustee might pursue any one or more of three certain described methods, viz.: (a) Take immediate possession of all the assets of the mortgagor and lease, manage or operate same until the bonds are paid; (b) sell the collateral stocks and bonds; (c) take judicial proceedings for the foreclosure or other enforcement of the security herein provided with respect to the collateral or any part thereof (article VII); that "upon commencement of judicial proceedings for the foreclosure hereof, or upon the commencement (by notice aforesaid) of proceedings for the sale hereunder of any of the collateral, the lien of this indenture and all the provisions of this indenture shall immediately and from that time extend to and *cover all other property and assets of the mortgagor of every kind then owned by it,* or to which it shall then be entitled in addition to those previously subject thereto, and including both tangible and intangible property, moneys, bonds, negotiable instruments, accounts, stocks, patents, contracts, rights, books, records, papers, and other assets of every kind, and the trustees shall immediately be entitled to possession thereof and are hereby authorized *to enter thereon and take possession thereof,* and the mortgagor shall deliver the same to the trustees, and every officer and agent of the mortgagor and every person having custody or possession thereof is hereby authorized and directed to deliver the same to the trustees, and the mortgagor shall do and execute such further acts and instruments as shall be necessary or reasonably requested to vest the same in the trustees hereunder on the same terms and provisions as the other property hereby conveyed, assigned or transferred to the trustees" (article VIII); that upon the commencement of foreclosure proceedings receivers might be appointed, by any court of competent jurisdiction, of the mortgaged property (article XII); and that "no bondholder or bondholders shall be entitled to take any proceedings for the enforce-

ment of any of the provisions hereof, or of the security hereby provided, except in case of refusal or neglect of the trustees to act as hereinbefore provided" (article XI).

The evidence shows the following state of facts as to the foreclosure suit, to wit: On April 2, 1913, default having been made in payment of principal and interest, the trustees commenced a foreclosure suit in the United States District Court for the Southern District of New York, making the usual prayer for the sale of the mortgaged property *and for a deficiency judgment,* and also asking for the appointment of receiver. The mortgagor (defendant herein) duly filed its answer, and thereupon such proceedings were had; that on the 26th day of March, 1914, said court rendered its decree adjudging the whole amount of the bonds to be due and payable from the mortgagor to the trustee, fixing a short day for payment, foreclosing the mortgage, decreeing sale and the application of the proceeds to satisfaction of the debt, and further providing that in case the amount realized was not sufficient to pay said bonds the special master should report the amount of the deficiency, and upon confirmation of the report "the complainants as trustees under said mortgage shall be entitled to a judgment against the defendant Alaska-Ebner Gold Mines Company for the amount of the deficiency, and shall have execution therefore pursuant to the rules and practice of this court." The sale was made, and duly confirmed on May 22, 1914; the mortgaged property bringing only $225,000. The amount of the deficiency was not authoritatively determined, however, until July 21, 1915, on which day a formal judgment for such deficiency (same amounting to $1,657,799.85) was entered in favor of the trustees and against Alaska-Ebner Gold Mines Company, and execution awarded therefor. No part of that deficiency has been paid.

It is not denied that the bonds sued on here are a component part of those represented by the trustee in the foreclosure suit.

The bonds and mortgage are a New York contract, and the foreclosure was had under the New York law and practice. The bill of complaint in the foreclosure suit asked for a deficiency judgment, and the defendant company duly appeared in said suit and did not question the right or propriety of a deficiency judgment. The New York statute

provides for deficiency judgments in foreclosure suits (2 Bliss, Annotated Codes of New York, § 1627); and so also does the statute of Alaska (Compiled Laws Alaska 1913, § 1221). The New York Code further provides that, "while an action to foreclose a mortgage upon real property is pending, or after final judgment for the plaintiff therein, no other action shall be commenced or maintained, to recover any part of the mortgage debt, without leave of the court in which the former action was brought." 2 Bliss, Ann. Codes N. Y. § 1628; Equitable Life Ins. Society v. Stevens, 63 N. Y. 341. While this provision would doubtless have no extraterritorial effect, yet the application of it in Morrison v. Slater, 128 App. Div. 467, 112 N. Y. Supp. 855, is significant as showing how far the New York court goes in the holding "that the whole matter should be adjudicated in the foreclosure suit." In that case the New York court reversed an order of the lower court granting to a mortgagee permission to sue a guarantor of the mortgage debt for a deficiency after a foreclosure suit in which the mortgagor might have procured (but did not procure) a judgment against the guarantor for the deficiency.

The Supreme Court of the United States said of the deficiency judgment statute of the District of Columbia:

"The bill in this suit prays for general relief and a decree for a deficiency is a necessary incident of a foreclosure suit in equity." Shepherd v. Pepper, 133 U. S. 626, 10 Sup. Ct. 438, 33 L. Ed. 706; Dodge v. Freedman's Savings & Trust Co., 106 U. S. 445, 1 Sup. Ct. 335, 27 L. Ed. 206.

See, also, First National Bank v. Pardee, 16 Mont. 390, 41 Pac. 78, holding that such judgment is proper, even though the mortgage does not of itself stipulate therefor.

In N. W. Mutual Life Ins. Co. v. Roby, 77 Fed. 374, 23 C. C. A. 196, it is held in substance that such a judgment is a matter of right.

The lex loci contractus controls as to liability for a deficiency and the enforcement thereof is a part of the mortgage contract. Hutchinson v. Ward, 114 App. Div. 156, 99 N. Y. Supp. 708.

Existing laws giving rights to parties to a contract or limiting their rights become a part of the contract as though

specifically set forth therein.  (114 App. Div. 156, 99 N. Y. Supp. 709.)

The ninety-second equity rule of the federal courts (29 Sup. Ct. xxxvii)[1] has long since cleared the way for such judgments in the equity forum.

Thus it would seem that the effect of a statute providing for a deficiency judgment is to annex to those mortgages to which the statute applies an implied agreement for a deficiency judgment in the foreclosure suit.

Although the mortgage does not, in so many words, provide that the trustee shall have power to take a deficiency judgment, yet there is nothing in the bond or mortgage denying that right.

On the contrary, the said recital in the bonds that they are "subject to the provisions of the mortgage," the fact that they are payable to bearer and are required to be authenticated by the trustee, the power given to the trustee to declare that failure to pay interest shall accelerate the maturity of the principal (a power not given to the individual bondholder), the power given the trustee in case of default of payment of principal or interest to enter upon and take possession of any or all of the mortgaged property and also any other property or assets of any kind and hold, lease, operate, and manage the same until the sum secured is paid, if the trustee shall so elect, the power given to the trustee to institute foreclosure proceedings and the provision that, on the commencement of either proceeding, "the lien of this indenture shall immediately cover all other property and assets of the mortgagor," the limitation upon the action of bondholders that "no bondholder shall be entitled to take any proceedings *for the enforcement of any of the provisions hereof* * * * except," etc. (article XI)—one of "the provisions hereof" is the payment of the bonds (article V, § 1)—the covenant in the mortgage to pay, all tend to show that the trustee is the "trustee of the debt" as well as of the mortgaged property.

As there was nothing in the bond or mortgage withholding from the trustee the right and power to take a deficiency judgment, and as the trustee had that legal right and power,

---

[1] This refers to the old equity rule. For similar provision in new rules, see rule 10 in 33 Sup. Ct. xxi.

and as the obtaining of the same was manifestly to the benefit of the bondholders, I think that it was his duty to obtain such judgment, and that if he had not done so he would have been remiss in his duty and chargeable with any loss occasioned thereby.

The intervener further contends that there was no judgment for deficiency until the coming in of the special master's report long after his complaint in intervention had been filed, and that as the original answer herein did not plead such judgment, the court should not have allowed the amended and supplemental answer to be filed.

The original answer set up that the right to a deficiency judgment had been adjudicated in the decree of foreclosure, and the decree itself sustains the answer in that regard. Such adjudication is the essential fact, and the ascertainment of the amount of the deficiency and the formal judgment became matters of course and of routine.

Under the New York practice the court may render a contingent judgment for deficiency without waiting for the report of the sale. 9 Encyc. Pldg. & Pr. p. 488, note 2.

"The court makes a full and final adjudication of everything, even to the order for the entry of the judgment for the deficiency by the clerk on confirmation of the report of sale. The court has nothing further to do than the confirmation of the report of sale. It is a final determination of the court of the rights of the parties. The entry of the judgment for deficiency, and docketing it, is ministerial and clerical pro forma, and as a matter of course. * * * If the order for judgment so to be rendered is a final determination of the court, it is as much res adjudicata as a formal judgment would be." Witter v. Neeves, 78 Wis. 547, 47 N. W. 938.

No continuance was asked for on account of the allowance of the amendment.

I think, then, that it must be held (1) that the trustee had power and authority to obtain the deficiency judgment; (2) that he had in effect obtained same prior to the intervention.

That being so, the next inquiry is: Is the individual bondholder precluded from suing on his bonds, the trustee having already procured a judgment for him on said bonds?

There are in the books many cases, some affirming, and some denying, the right of the bondholder to pursue his remedy on his bonds, irrespective of the mortgage and the trustee. It would serve no good purpose to attempt a review

of these cases for they, nearly all, depend upon the construction of the limitations in the particular bond and mortgage then being considered, and in very few of them does this feature exist, to wit, that the trustee, acting for all the bondholders, had already procured a valid deficiency judgment against the mortgagor at the very time the individual bondholder was seeking a judgment on his bonds.

Fletcher's Cyclopædia Corporations, § 1062, has this to say:

"Where the trustee has brought a foreclosure suit in which a decree was entered, an independent action by a bondholder upon his bond cannot be maintained where forbidden in effect by the mortgage and for the reason the decree is res judicata"—citing Watson v. Chicago, R. I. & P. R. Co., 169 App. Div. 663, 155 N. Y. Supp. 808.

The case cited is almost on all fours, only there seems to have been an express authorization for a deficiency judgment; still, "if a deficiency judgment is a necessary inci-. dent of a foreclosure suit" under the statute governing the case at bar, the difference in the cases would not lead to a different conclusion.

We have seen that the deed of trust contains a covenant to pay and confers the right to bring a foreclosure suit, and that the rendering of a deficiency judgment is an incident of the decree in foreclosure to which the mortgagee is entitled as a matter of right, and that the law is a part of every contract. In section 340a of Jones on Corporate Bonds and Mortgages (3d Ed.) p. 377, the author says:

"The personal covenant is not inserted with a view to its enforcement by the several bondholders. If such were its object it would be wholly unnecessary, for without it they have such right but the trustee has not. The provision necessarily confers the power to deal with the deficit upon the trustee. This avoids a multiplicity of suits and a disastrous race for diligence by the individual bondholders by substituting the inexpensive and just plan of extending the trusteeship to the deficit. The trustee's authority to take a personal judgment for the deficiency after exhausting the security excludes a bondholder from suing at law for the deficiency and the reference to the mortgage contained in the bond puts the purchaser of bonds on inquiry in regard to such a provision in the mortgage."

Grant v. Winona Ry. Co., 85 Minn. 422, 89 N. W. 60, is a case in point and is cited by Jones as sustaining the text last above quoted.

The case of Laing v. Queen City Ry. Co. (Tex. Civ. App.) 49 S. W. 136, seems to be a case on all fours with the case at bar so far as the essentials are concerned, and there the court said:

"The provision that the mortgagee should have authority to resort to judicial proceedings for the foreclosure of the mortgage was equivalent * * * to constituting it trustee of the debt, as well as of the property mortgaged to secure it. The several individuals who became the purchasers of the bonds, including the plaintiff, acquired them with this condition attached, viz. that the trust company, within the limitation of the terms of the mortgage, retained the authority to sue upon said bonds for the use and benefit of the actual owners thereof, and reduce the debt evidenced by them to a judgment. * * * The judgment is not attacked for any fraud, concealment, or collusion on the part of the trustee. * * * Plaintiff's debt upon which he sues in this case is merged in said judgment, * * * and he is barred and estopped thereby from the maintenance of this suit for a recovery on his original bonds."

This case is cited in 3 Thompson on Corporations (2d Ed.) § 2593, note 81, and in 3 Cook on Corporations (7th Ed.) p. 2918, note 6.

Mackay v. Randolph Macon Coal Co., 178 Fed. 881, 102 C. C. A. 115, would seem to hold to the contrary, yet I think that on a closer examination of that case it fades from view as an authority here. In that case the mortgage contained no provision similar to that contained in the mortgage here, to wit, that "no bondholder shall be entitled to take any proceedings for the enforcement *of any of the provisions hereof, or* of the security hereby provided, except in case of refusal or neglect of the trustee," etc. The opinion also states that Grant v. Winona, supra, and Laing v. Queen City Ry. Co., supra, are based upon statutes which provide for deficiency judgments. If so, that would not make those cases inapplicable here, for both in New York and in Alaska there is a similar statute. The opinion concedes that, if the mortgagee and the payee of the bonds were one and the same person, the payee could not bring his suit on the bond after having obtained a judgment for deficiency in the foreclosure suit, but applies a different rule where the mortgagee is a trustee. I am unable to see how such a distinction can obtain where, as in this case, the trustee is the trustee of the bondholders also, and has brought the foreclosure and obtained

the deficiency judgment for and on behalf of all the bond-holders, including the intervener, who does not attack the trustee as being guilty of fraud, collusion, or negligence. What was actually decided in the case was that a deficiency judgment by the trustee does not prevent the owners of bonds proving in bankruptcy that they were induced to purchase said bonds by false pretenses held out by the stockholders of the corporation, and hence that they are creditors of the corporation, not by reason of the promises contained in the bonds, but by reason of the fraud which induced them to purchase the bonds.  The court said:

"The whole case is, therefore, reduced simply to this: Should the court of bankruptcy have aided these creditors by removing one of the apprehended dangers from their pathway, when it could have done so, without the slightest cost or prejudice to any one?"

The decision was concurred in by only two out of the three justices sitting, Justice Adams dissenting, and, although the case was cited by the United States District Court in Re Ellis, 242 Fed. 156, yet it is apparent that the approval was on the point that the agreement of parties cannot dispense with the requirement that suits can be maintained only by the real party in interest, and that as the New Jersey statute *expressly prohibited* deficiency judgments in foreclosure suits the parties therefore could not confer a right to such a judgment.

It is true that the intervener has his bonds, that they have never been paid, but nevertheless his agent, his representative, his trustee, has obtained a valid judgment on them for him on personal service and in a court of competent jurisdiction, and I fail to see why he is not concluded from bringing this second suit.

"Neither court would be bound to take notice of the judgment in the other court judicially, but when the matter is pleaded in due time and it is made to appear that a judgment on the same cause of action has been recovered and is in full force and effect that judgment must be held to merge the evidence of the debt, whether that evidence be parol or written, in the judgment first recovered." Schuler v. Israel, 120 U. S. 506–509, 7 Sup. Ct. 648, 649 (30 L. Ed. 707).

The Supreme Court of the United States, in a case where the jurisdiction of the (federal) trial court depended solely

on diverse citizenship, held that a judgment recovered by the trustee merged the bonds and that the citizenship of the trustee and not of the bondholders governed. Hamer v. N. Y. Ry. Co., 244 U. S. 266, 37 Sup. Ct. 511, 61 L. Ed. 1125.

So far as the Alaska-Ebner Gold Mines Company alone is concerned, nothing has developed which could operate to put the intervener on a plane different from that of any other bondholder, and if he can maintain a separate action against that company, notwithstanding his agent has already recovered for him and many others, so also could each of those other bondholders, even though by so doing they would subject the company to as many suits and to as many judgments as there are courts having jurisdiction. It was in part to obviate just such a multiplicity of suits that, in large bond issues, the device of mortgage deeds of trust is resorted to. If such thing could be, then each bondholder would have two judgments for the same debt, to wit, the judgment recovered by the trustee, of which he is a beneficiary for an aliquot part, and the one recovered by himself, of which he is the sole owner, and each of these judgments might be assigned to bona fide purchasers for value.

I think the complaint will have to be dismissed.

⬤⟳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes