Elizabeth G. Cunningham, Appellant, *v.* Pressed Steel Car Company, Respondent.

First Department, June 20, 1933.

*Eugene Untermyer* of counsel [*Kendall & Herzog,* attorneys], for the appellant.

*Albert Stickney* of counsel [*Frank H. Heiss* with him on the brief; *Larkin, Rathbone & Perry,* attorneys], for the respondent.

*Enos S. Booth* of counsel [*Samuel Hoffman,* attorney], for Real Estate Futures, Inc., as *amicus curiæ.*

Sherman, J.   The question here presented is whether certain bonds which are the subject of this action contain on their face an absolute and unconditional promise to pay the bearer at maturity, or whether a reference provision to the terms of another unattached document makes them subject to a condition which might postpone payment indefinitely.

On December 30, 1922, defendant issued its ten-year five per cent convertible gold bonds with coupons annexed maturing semi-annually.   By each of these bonds defendant " promises to pay to the bearer hereof (or, if this bond be registered, to the registered

holder hereof), on January 1, 1933, the sum of One Thousand ($1,000.00) Dollars, in gold coin of the United States of America, of or equal to the present standard of weight and fineness, and to pay interest thereon from January 1, 1923, at the rate of five (5%) per centum per annum, payable in like gold coin, semi-annually, on the first day of January and the first day of July, but only upon presentation and surrender of the annexed coupons for such interest as they severally mature."

It is not disputed that plaintiff is the owner of four of said bonds, each in bearer form, of the face value of $1,000, and of the coupon annexed to each bond calling for the payment of $25, all of which matured on January 1, 1933. Said four bonds, and the appurtenant coupons, having been presented for payment on or after January 1, 1933, at the place in New York city where they were made payable, and payment having been refused, plaintiff brought this suit at law for the recovery of the sum of $4,100.

In opposing plaintiff's motion for summary judgment defendant contends that payment of the bonds cannot be enforced except by the trustee named in the trust indenture, dated December 30, 1922, upon the theory that restrictions contained in said indenture, upon the rights of the bondholders to bring individual suits, are a part of the contract of the bondholder with the defendant and the trustee under the indenture. In attempting to sustain its contention, defendant relies on the following provision in the bond: "This bond is one of an issue of bonds aggregating Six Million ($6,000,000.00) Dollars, in denominations of $1,000.00 and $500.00, all of like date and of like tenor except as to denomination, all of which bonds have been issued under and are equally secured by an Indenture dated December 30, 1922, between the Company and The New York Trust Company as Trustee, to which Indenture reference is hereby made for a statement of the rights of the holders of said bonds."

By reason of the quoted language defendant maintains that the provisions in the trust indenture are incorporated into the contract, and points particularly to article 4, section 6 thereof, which reads: "Section 6. All rights of action on or because of the bonds and interest coupons or any of them, or under this indenture, except as hereinafter provided, are hereby expressly declared to be vested exclusively in the Trustee, and such rights may be enforced by the Trustee without the possession of any such bond or interest coupon. No holder of any such bond or interest coupon shall have any right to institute any suit, action or proceeding for the enforcement of any of the terms of this agreement or of such bonds

or coupons without first giving to the Trustee written notice that one or more of the events of default hereinabove mentioned has occurred, nor unless the holders of one-fourth in principal amount of the then outstanding bonds shall have requested the Trustee in writing and shall have afforded it reasonable opportunity to institute such action, suit or proceeding in its own name, and shall have offered indemnity satisfactory to the Trustee, and shall have deposited their bonds with the Trustee if so requested by the Trustee; but if the Trustee shall have failed to take such action for sixty days after such written notice, request, offer of indemnity and deposit of bonds, the holder of any bond or bonds may proceed thereon." Accordingly defendant argues that unless and until the requisite number of bondholders collectively request the trustee to act and afford it the opportunity to enforce the default, in case it were deemed advisable for their protection, the bondholders individually are prohibited from bringing suits.

However, when this suit was commenced, the bonds involved were unpaid and overdue. We do not find that the reference o the indenture constitutes a bar to the maintenance of this action. The covenant in the bond that defendant will pay the principal amount thereof on January 1, 1933, is absolute on its face. The reference to the indenture did not fairly place the bondholder on notice of any restriction upon defendant's obligation to pay at maturity, so as to preclude action at that time by individual bondholders to sue for and collect the principal.

It is true that the indenture affords the bondholders certain additional rights, such as the right to convert bonds into stock of defendant corporation, and specific remedies to accelerate maturity in the event of a default prior thereto, which are to be invoked for their benefit by the trustee upon demand of a sufficient proportion of the bondholders. The bonds in suit, however, have not become due by acceleration or otherwise, but are past due obligations. If there was to be a restriction upon defendant's obligation to pay at maturity, then the bondholder was entitled to receive notice thereof in reasonably clear language expressed on the face of the bond. The mere reference to the indenture for a statement of the rights of the holders is not enough to take away by implication, drawn from another instrument, plaintiff's right to sue upon defendant's positive acknowledgment of and unconditional promise to pay the debt.

There being no definite restrictive language in the bond which inhibits the bondholder's right to enforcement of the obligation at maturity, any inconsistency between the bond and the indenture must be construed in favor of the bondholder. (*Enoch* v. *Brandon,*

249 N. Y. 263, 268; *Beach* v. *Supreme Tent K. of M.*, 177 id. 100, 105; *Goodjon* v. *United Bond & Building Corp.*, 226 App. Div. 137, 142.) The logic of this principle was well stated in *Rothschild* v. *Rio Grande Western R. Co.* (84 Hun, 103, 110; affd., 164 N. Y. 594), where the court said: " The provisions of the bonds meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed."

Defendant's primary covenant to pay at maturity contained in the bonds themselves is not qualified by the collateral promises and agreements of defendant mentioned in the indenture. The bondholder's remedy to proceed on the primary obligation is separate and distinct from the right to enforce the collateral promises of the indenture. In the bonds before us there is no reference recital which expressly conditions defendant's promise to pay at maturity by the terms of the indenture. The question of a reference provision to another document was before this court in *General Investment Co.* v. *Interborough R. T. Co.* (200 App. Div. 794, 800; affd., 235 N. Y. 133), and it was there held: " In said primary provision of said notes there is the express promise of the defendant to pay to the bearer the said sum of $1,000 on the day and at the place stated, together with interest at seven per cent. Nowhere in the notes is there any qualification or limitation whatever of the positive promise to pay, nor do the notes contain any restriction whatever to the holders' right to sue to recover upon the said primary indebtedness."

The general tenor of these bonds shows that they are negotiable instruments and have no doubt been purchased by the general public as such. Section 90 of the Negotiable Instruments Law provides that " the holder of a negotiable instrument may sue thereon in his own name." The application executed by defendant for listing them on the New York Stock Exchange refers to no provision in the indenture, or otherwise, which would preclude any holder from enforcing collection at maturity, and states that the bonds mature on January 1, 1933. It clearly appears that defendant intended that the bonds should be negotiable, to facilitate their marketability. Yet to uphold the construction defendant now seeks to place upon these bearer bonds would render them non-negotiable. In *Enoch* v. *Brandon* (*supra*) the court said (at p. 266): " The statute [Negotiable Instruments Law] deals with the form of the instrument — with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum, on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it

negotiable. If it does, no collateral agreement affects its character." In that case the court interpreted the reference provision as limiting the words " a statement of the rights of the bondholders " to the procedure under the trust indenture, stating (at p. 268): " We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the boligor was speaking solely of the security. A purchaser scanning the bonds would have the same thought. It would never occur to him that when November 1, 1941, arrived, because of something contained in the mortgage he might be unable to collect the amount due him."

In *Higgins* v. *Hocking Valley R. Co.* (188 App. Div. 684) this court held that the negotiability of bonds issued by the defendant were not affected by the mere reference to a mortgage or deed of trust, stating (at p. 695): " The bonds themselves were the principal security, and the mortgage or deed of trust was given only as collateral security for their payment."

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion for summary judgment for the sum of $4,100, with interest from January 1, 1933, granted, with ten dollars costs.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.