SARAH KRAUSE, Plaintiff, *v.* THE LEHIGH VALLEY COAL COMPANY, a Foreign Corporation, and LEHIGH VALLEY RAILROAD COMPANY, a Foreign Corporation, Both Doing Business in the State of New York, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, August 21, 1939.

*Karl A. Blaustein* [*Jason Meth* of counsel], for the plaintiff.

*Alexander & Green* [*H. S. Ogden* of counsel], for the defendant Lehigh Valley Railroad Company.

WATSON, J. Plaintiff and defendant Lehigh Valley Railroad Company, respectively, move for summary judgment. Service on defendant Lehigh Valley Coal Company was set aside, and the action has proceeded against defendant Lehigh Valley Railroad Company, hereinafter called the defendant.

This defendant is sued as guarantor upon two promissory notes of a series issued January 2, 1933, by the Lehigh Valley Coal Company, denominated " Five year secured 6% gold notes, due January 1, 1938." Thereby it promised to pay to the bearer or registered owner on the 1st day of January, 1938, the principal sum, (in this instance $500 each), and to pay interest on said principal sum at the rate of six per cent per annum, semi-annually on the first days of January and July in each year until payment of the principal sum.

These notes recite that they were issued under and subject to the provisions of a trust indenture, dated January 2, 1933, executed and delivered to The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee, " to which trust indenture reference is hereby made for a description of the property pledged, the nature and extent of the security and the rights of the holders of the notes and coupons and of the Trustee in relation to such security."

The notes further provide: " In case of the happening of an event of default as specified in said trust indenture, the principal sum of the notes outstanding under said trust indenture may be declared or may become due and payable forthwith, in the manner and with the effect in said trust indenture provided."

The trust indenture provides for the payment by the maker of the notes to the trustee of a minimum sinking fund in monthly installments on the first day of each month.

By agreement as of January 1, 1938, the maturity date of a substantial amount of such notes (including the two here in suit), was extended to January 1, 1943. A copy of the extension agreement was attached to each of the notes so extended. It provides that nothing contained therein, nor anything done thereunder, is intended in any manner to affect or prejudice, or in any way shall affect or prejudice, the obligation of the notes or the rights of the holder thereof thereunder or under the trust indenture. It also authorizes an appropriate amendment of the trust indenture. The trust indenture was accordingly amended by a supplemental indenture, which in substantially the same language as that of the extension agreement, protects the rights of holders of the extended notes and which also saves the rights, powers and obligations of the trustee.

The defendant Lehigh Valley Railroad Company having indorsed its guaranty upon the original notes, likewise, by indorsement upon the extension agreement, unconditionally and irrevocably guaranteed the due and punctual payment of the principal and interest of the extended notes " as and when the same shall respectively become due and payable pursuant to the terms of said extension agreement, whether at maturity, as extended, or by declaration, or otherwise," and further unconditionally and irrevocably guaranteed the payment to the trustee under the trust indenture of " the moneys payable for the sinking fund, to the extent of the minimum sums required therefor, in the amounts and at the times provided for in said trust indenture " during the extended term of the notes.

The complaint alleges default in the monthly sinking fund payments required to be made on the first day of each of the months of January, February and March, 1939, by reason whereof plaintiff demanded payment of the notes, which was refused. Thereupon, in March, 1939, she brought this action to recover the principal sum of the notes, with interest thereon.

As one of its defenses, this defendant relies upon the provisions of the trust indenture whereby upon the happening of one of the " events of default," the trustee may, and upon written request of the holders of twenty-five per cent in principal amount of the notes then outstanding shall, by notice in writing delivered to the company (maker), declare the principal amount of all the notes then outstanding (if not already due and payable) to be due and payable immediately. The answer alleges that the trustee has not delivered any notice to the maker, declaring the notes due and payable and has not received the written or other request of the holders of twenty-five per cent in principal amount of the out-

standing notes to do so. The answer further alleges that the notes, the extension agreement, the trust indenture and the supplemental indenture were all executed and delivered in the Commonwealth of Pennsylvania and that it is the law of that Commonwealth that the holders of such notes are bound by the terms of the trust indenture referred to in the notes, and that thereunder the duty of accelerating the maturity of the notes is vested solely in the trustee and the individual noteholder is precluded from declaring the principal sum due and payable and from suing to recover the principal amount prior to the specified maturity date.

Plaintiff's right to sue upon the notes, according to their terms, cannot be doubted. It is not impaired by the reference in the notes to the trust indenture for a description of the property pledged, the nature and extent of the security and the rights of the holders of the notes and coupons and of the trustee in relation to such security. (*Cunningham* v. *Pressed Steel Car Co.*, 238 App. Div. 624; affd., 263 N. Y. 671.) There is here no inconsistency between the notes and the indenture. On the contrary, the right of the holder to sue on the notes, as distinguished from the pursuit of the remedies under the indenture, is expressly declared by the indenture itself, which provides (Art. VI, § 10) " that nothing contained in this trust indenture or in the notes shall affect or impair the obligation of the Company, which is unconditional and absolute to pay the principal and interest of the notes as therein promised or shall affect or impair the right of action which is also absolute and unconditional of the holders of the notes to enforce such payment by virtue of the contract embodied in the notes and not by virtue or by availing of any provisions of the trust indenture." And by virtue of the supplemental indenture (§ 12) this provision is continued in force for the benefit of the notes as extended.

The question raised here is whether a noteholder has the right to accelerate the maturity of his notes, in case of intermediate default. The notes do not in so many words confer that right. The only relevant provision therein is the one already quoted and here repeated: " In case of the happening of an event of default as specified in said trust indenture, the principal sum of the notes outstanding under said trust indenture may be declared or may become due and payable forthwith, in the manner and with the effect in said trust indenture provided."

Therefore, to test his right to accelerate maturity, the noteholder is forced to turn to the trust indenture, and so is bound by its provisions. (*Batchelder* v. *Council Grove Water Co.*, 131 N. Y. 42, 45; *Watson* v. *Chicago, Rock Island & P. R. R. Co.*, 169 App. Div. 663, 670.)

What, then, does the trust indenture provide in that regard? It is, in substance, this (Art. VI, § 1), that in case one or more " events of default " shall happen (and non-payment of sinking fund installment continuing for sixty days after written notice thereof would be such an event of default), " the Trustee may and upon written request of the holders of twenty-five per cent in principal amount of the notes then outstanding shall, by notice in writing delivered to the Company declare the principal amount of all the notes then outstanding (if not already due and payable) to be due and payable immediately; and upon such declaration the principal amount of all the notes then outstanding shall become and be immediately due and payable, anything in this trust indenture or in the notes contained to the contrary notwithstanding."

Clearly, under this clause, the right to accelerate the maturity of the notes is vested exclusively in the trustee and may not be exercised by a noteholder.

In *Watson* v. *Chicago, Rock Island & P. R. R. Co.* (90 Misc. 388; affd., 169 App. Div. 663) the Appellate Term said:

" No provision is made in the bond that upon default of interest the principal shall become due at the election of the holder of the bond. On the contrary the bond provides that ' For the  *  *  * rights of the holders of said bonds  *  *  *  reference is to be made to said trust agreement; ' and the right to elect that the principal shall become due before November 1, 2002, the stipulated due date, is, by the trust agreement, limited to the trustee.

" Plaintiff has, therefore, no cause of action, as an individual holder, to recover the principal of the bond before the year 2002, the date fixed by the terms of the bond for the payment thereof."

In *Munch* v. *Central West Public Service Co.* (128 Neb. 645; 259 N. W. 736), a provision in a corporate trust mortgage, which is incorporated by reference in the bonds, authorizing acceleration of the maturity of such bonds for non-payment of interest to be exercised by the trustee in its discretion or upon the written request of twenty-five per cent of the bondholders, was held to exclude the right of acceleration by any one other than the trustee, or upon the happening of conditions precedent contained in the mortgage, where that was the only provision for acceleration, and accordingly it was held that a bondholder could not accelerate the maturity for default in interest and sue to recover the principal amount. To the same effect is *Meek* v. *Electrical Engineering Equipment Co.* (282 Ill. App. 616).

In *Batchelder* v. *Council Grove Water Co.* (131 N. Y. 42) the trust deed provided that on default in interest continuing for six months after presentment of coupons and demand for payment,

" then and thereupon the principal of all said bonds hereby secured shall immediately be due and payable." Yet, because the mortgage provided in such case the remedy of foreclosure by the trustee on the request of the holders of a majority of the bonds, and because the bonds in language much the same as that of the notes here in suit, provided that in case of default in the payment of interest the principal sum should become due . " in the manner and with the effect provided in the said trust deed or mortgage," it was held that the bondholder was not entitled to sue prior to the specified maturity date to recover principal and interest. The court held that the clause providing the remedy " plainly limits the effect of the provision making the principal of the bonds due upon the failure to pay semi-annual interest, and it prescribes the manner in which such a breach of the contract shall be made available. *A fortiori*, in this case, where maturity is not accelerated *ipso facto* upon default, but by the express terms of the indenture, the right to accelerate is conferred upon the trustee alone, the plaintiff cannot, without the action of the trustee, claim accelerated maturity. This conclusion is reinforced by the fact that provision is made in the indenture whereby, upon certain conditions, the maker may be relieved from its default and the acceleration of maturity rescinded by the action of the trustee of its own motion, or upon notice from the holders of a majority in amount of the notes then outstanding; and by the further fact that by the terms of the indenture the right of action secured to the noteholders is the carefully limited right to enforce payment " by virtue of the contract embodied in the notes and not by virtue of or by availing of any provision of this trust indenture."

I hold, therefore, that by the terms of the notes and of the indenture, the right to accelerate maturity of these notes is vested solely in the trustee; that the plaintiff has not that right, and consequently, in the absence of a showing that the notes have matured by the exercise of the right of acceleration by the trustee, plaintiff may not at this time cast this defendant in liability upon its guaranty of payment of principal.

The answer alleges that the notes, the extension agreement, the indenture and the supplemental indenture were all executed and delivered in the Commonwealth of Pennsylvania. However, the case is not complicated by any question of conflict of laws, for this defendant submits the affidavit of an attorney of that Commonwealth, which plaintiff does not challenge, wherein the affiant testifies in effect that it is the law of Pennsylvania that under the provisions of these notes and of the trust indenture the right and power of accelerating maturity is vested solely in the trustee

and the individual bondholder is thereby prevented from declaring the principal sum of the notes held by him to be due and payable prior to the specified maturity date, January 1, 1943, and from suing to recover the principal prior to that date against either the maker or this defendant.

The case presents another aspect: The indenture provides, as previously stated, for the payment by the maker of the notes to the trustee of a certain minimum sum in equal monthly installments for a sinking fund. This sinking fund is set up for the retirement of the outstanding notes and the indenture provides that the moneys so received are to be applied by the trustee " from time to time as soon as practicable after the receipt thereof, to the purchase from the Company or from any other owner or owners, of notes issued and outstanding hereunder at the best prices obtainable but not in excess of the principal amount thereof, with accrued interest to the date of acquisition. Purchase of notes as aforesaid shall be made promptly and as far as possible from the Company and thereafter may be made by the Trustee at public or private sale without notice, provided notes shall be offered to it or shall be purchasable as aforesaid. The Trustee may also in any usual manner to be determined by it in its discretion, invite by advertising at the cost and expense of the Company offers of notes issued and outstanding hereunder for sale to the sinking fund, subject as aforesaid."

Quite apart from its guaranty of payment of principal and interest, defendant unconditionally guaranteed to the noteholders " the payment to the Trustee under the trust indenture of the moneys payable for the sinking fund, to the extent of the minimum sums required therefor, in the amounts and at the times provided for in said trust indenture."

The complaint alleges default in these sinking fund payments. For such breach of the sinking fund provisions, whereby plaintiff was deprived of the opportunity she might have had to secure the redemption of her notes, she would have a cause of action against the maker and also against defendant upon its guaranty to recover damages measured by the principal amount of her notes. (*Hall* v. *Nassau Consumers Ice Co.*, 260 N. Y. 417; *Fortunato* v. *Banco de Columbia*, 252 App. Div. 776; *Deutsch* v. *Gutehoffnung-shutte, etc.*, 168 Misc. 872; *Barnes* v. *United Steel Works Corp.*, 11 N. Y. Supp. [2d] 161.) This cause of action is not based upon the maturity of the notes and does not depend upon the acceleration clause.

The complaint, however, is not framed upon that theory. While it alleges default in the sinking fund payments, it does so merely

to base thereon the claim of accelerated maturity. It does not show that such sinking fund payments were applicable, as appears by the indenture, to the redemption of outstanding notes. For want of such allegation, plaintiff under her present complaint, may not have judgment against defendant upon its guaranty of sinking fund payments. (*Hallgarten* v. *Wolkenstein*, 204 App. Div. 487.)

Both parties have failed to comply with the requirements of rule 113 of the Rules of Civil Practice that a motion for summary judgment must be made " upon the affidavit of a party or any person having knowledge of the facts, setting forth such evidentiary facts as shall, if the motion is made on behalf of the plaintiff, establish the cause of action sufficiently to entitle plaintiff to judgment, and if the motion is made on behalf of the defendant, such evidentiary facts, including copies of all documents, as shall fully disclose defendant's contentions and show that his denials or defenses are sufficient to defeat plaintiff, together with the belief of the moving party either that there is no defense to the action or that the action has no merit, as the case may be."

To meet the requirements of this rule, " There must be supporting affidavits, proving the cause of action, and that clearly and completely, by affiants who speak with knowledge." (*Curry* v. *MacKenzie*, 239 N. Y. 267, 269.) That was said of plaintiff's motion. The affidavits submitted hereon do not measure up to this requirement. On the part of plaintiff, the affidavit is that of her attorney. It does not set forth evidentiary facts establishing either plaintiff's ownership of the notes, which is controverted, or the default by the maker of the notes in making the sinking fund payments, which also is controverted, nor does it show plaintiff's belief that there is no defense to the action. ( *Universal Credit Co.* v. *Uggla*, 248 App. Div. 848; *Bevelyn Realty Corp.* v. *Brooklyn Const. Co., Inc.*, 140 Misc. 74; *State Bank* v. *Mackstein*, 123 id. 416; *Davison Coal Co.* v. *Interstate C. & D. Co.*, 193 N. Y. Supp. 883.) On defendant's motion, the affidavit of its vice-president and general counsel is equally faulty. Its averments as to the non-exercise by the trustee of the right to accelerate maturity are made upon information and belief. It does not set forth evidentiary facts, showing the sufficiency of defendant's denials of plaintiff's ownership, and of default in sinking fund payments, to defeat the plaintiff; nor defendant's belief that the action has no merit.

I, therefore, deny both motions, without prejudice to an application by plaintiff to amend her complaint, if she be so advised, and with leave to each party to renew on proper affidavits in conformity with the rule.