**Harry GOLDSMITH, Plaintiff,**

v.

**ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY, Defendant.**

**Civ. A. No. 1481.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Feb. 19, 1962

Thomas and Evans, Hickory, N. C., for plaintiff.

Thomas D. Barr, Cravath, Swaine & Moore, New York City, Francis H. Fairley, Fairley, Hamrick & Hamilton, Char-

lotte, N. C., John C. Ashton, Jr., St. Louis, Mo., for defendant.

WARLICK, Chief Judge.

This action was brought by plaintiff to recover treble damages pursuant to Section 4 of the Clayton Act (15 U.S.C.A. § 15), which he alleges were sustained as a result of the defendant's violation of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1–2) and Section 7 of the Clayton Act (15 U.S.C.A. § 18) as amended.

At the time of the trial plaintiff was permitted to amend his complaint to set up in the alternative a cause of action for actual damages pursuant to Section 8 of the Interstate Commerce Act (49 U.S.C.A. § 8), which he alleges he sustained as a result of the defendant's violation of Section 5, Paragraph (4), of such Act (49 U.S.C.A. § 5(4)).

The case by agreement was heard by the court without a jury, and obedient to Rule 52(a), 28 U.S.C.A., the following facts are found and conclusions made:

Plaintiff is a resident of Chesterfield, South Carolina, and for the past ten years and more has been engaged in the operation and management of a service station, a re-capping business, and has at times been in the used car business, and occasionally has worked part time as a jewelry supply salesman. In addition to all of the above occupations plaintiff has traded in the stock market during the above periods,—and it is in this latter *sideline* with which this case is concerned.

Defendant, St. Louis-San Francisco Railway Company is a corporation, duly chartered and existing under the laws of the State of Missouri, as a common carrier. It has its principal office and place of business in St. Louis, in that state.

Although the facts making up this action are very simple, yet counsel in preparing it for trial have so thoroughly explored every angle, that the file actually weighs 6¾ pounds, which in itself constitutes quite a responsibility for a court undertaking to determine its merits.

Sometime prior to April 9, 1951, plaintiff evidently had done some crystal-gazing into the financial and speculative world and came up with the thought that he could beat the stock market racket as practiced on the Street, and following his gleam of intuition *sold short,* through his broker, Francis I. DuPont and Company of Charlotte, North Carolina, four hundred shares of common stock of the Central of Georgia Railway Company, a common carrier organized under the laws of the State of Georgia, in four separate sales of one hundred shares each, as the following schedule would indicate.

| DATE | Price Received | Total Purchase Price |
|---|---|---|
| April 9, 1951 | 20½ per share | $2,019.70 |
| May 23, 1951 | 18¼ per share | 1,797.83 |
| Sept. 19, 1952 | 23⅝ per share | 2,330.64 |
| July 21, 1953 | 38⅝ per share | 3,823.11 |

and received a credit from his broker in the amount of $9,971.28, after deductions had been made for brokerage, commissions and taxes. It being of general knowledge by those who play the market that one *selling short* lives on the fond hope that the stock sold short would go down and he would be able to purchase said stock at a profit at the time of delivery, to effect his short sales. In this plaintiff's guess turned out to be dead wrong, as the price of the stock continued to advance.

On November 3, 1954, or approximately 15½ months after plaintiff had sold short the last of the four hundred shares

of stock the defendant began purchasing and taking delivery of the common stock of the Central of Georgia Railway and continued to make such purchases until May 27, 1957.

On December 5, 1955 the defendant filed an application with the Interstate Commerce Commission requesting permission to acquire control of the Central of Georgia Railway Company through stock ownership. In its report and order dated November 14, 1958, the Commission reversed a previous order of Division 4 of the Commission (295 ICC 563) which had recommended the approval of the application filed, and found that by virtue of its large purchases of both preferred and common stock of the Central of Georgia Railway the defendant had already secured this control by the time it had filed its application. Further the Commission found that this action on the part of the defendant was in violation of Section 5, Paragraph (4) of Interstate Commerce Act, for that the defendant had not acquired permission from the Commission to gain control of another Railway, before it actually secured such control by purchase. The Commission held that such control would not be in the public interest and ordered the defendant to either sell the stock it had heretofore purchased or place such stock in an independent voting trust. The defendant at no time since its purchase of the stock of the Central of Georgia Railway has ever attempted to vote its holdings at any meeting and has never exercised or attempted to exercise any control over the operation of the management of the affairs of said Central of Georgia Railway.

On February 4 and 5, 1957, plaintiff covered his *short sales* of four hundred shares of Central of Georgia common stock. He purchased these on the market through the same broker at a cost of 48¾ per share, for a total of $19,657.52. He thus suffered a pecuniary loss of $9,686.24 on such transaction. However the plaintiff in his last brief filed and in his final proposed findings of fact conceded that his loss could not be greater than $7,457.52, or that amount which is reflected by the shares of stock sold short prior to the first purchase made by defendant and that is the amount he now seeks to recover. Plaintiff contending that on November 3, 1954 when the defendant first began to purchase the stock of the Central of Georgia Railway Company, that the stock was then selling for $30.50 per share, and that 400 shares then purchased would have cost plaintiff only $12,200.00.

It is the contention of the plaintiff that the actions of the defendant were in furtherance of a conspiracy to lessen competition and create a monopoly, in violation of Sections 1 and 2 of the Sherman Act, and Section 7 of the Clayton Act. In the process of acquiring this stock the plaintiff contends the defendant upset the normal balance of supply and demand, thereby causing the value of the stock to rise unnaturally. For that reason the plaintiff contends that he was forced to purchase four hundred shares to cover his *short sales*, at a substantially higher price than he would normally have had to pay, and on this theory he asserts such to be the basis for his loss and the grounds upon which he should recover in this action.

The question then presented is whether the evidence discloses in substance a violation of the Anti-Trust Act by the defendant with a consequent material injury and damage to the plaintiff.

The language of Section 15, on which this action is based, is as follows:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

District Judge Chestnut, sitting with the Court of Appeals had this to say with respect to plaintiff's right to recover in an action as is herein shown:

"To recover, the plaintiff must establish two things: (1) An violation of the Anti-Trust Act and (2) damages to the plaintiff proximately resulting from the acts of the defendant which constitute a violation of the Act. In a civil suit under this section, the gist of the action is not merely the unlawful conspiracy or monopolization or attempt to monopolize interstate commerce in the particular subject matter, but is damage to the individual plaintiff resulting proximately from the acts of the defendant which constitute a violation of the law. A mere conspiracy with intent to violate the law while it may be the basis of a valid indictment under the criminal sanction of the Anti-Trust Act, does not give rise to a personal civil suit for damages." Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885.

In dealing with the above clear cut requirements, which must be met before any recovery can be had, and undertaking to carefully analyze the allegations in the complaint as well as the evidence offered at the trial, the most that can be said for plaintiff's cause of action is that he sold the 400 shares short over a period of time beginning as early as 3½ years prior to the time the defendant began acquiring stock in the Central of Georgia Railway; and selling his last 100 shares short approximately 16 months prior to the time defendant began its purchases. Naturally the defendant was not aware of this action on the part of the plaintiff, so it would be rather difficult to determine under these facts what act or acts of the defendant would amount to a violation of the law with a consequent damage to plaintiff. I fail to see any causal connection whatsoever, and it would therefore seem unnecessary in this case to actually determine whether or not the defendant had by its purchases violated any of the Anti-Trust laws as set out in plaintiff's complaint. However, I am of the opinion that if such finding should be made, plaintiff still has failed to establish that he was injured in his business or property by reason of anything forbidden in the Anti-Trust laws, with a resultant damage proximately caused thereby or which had any causal relation or connection therewith.

I accordingly find that plaintiff is not entitled to a recovery under his allegations with respect to Sections 1 and 2 of the Sherman Act or Section 4 of the Clayton Act.

At the time this case was called for trial plaintiff sought permission to advance an alternative right and to recover actual damages pursuant to Section 8 of the Interstate Commerce Act (49 U.S.C.A. § 8), which provides:

"In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

However under this provision recovery cannot be had unless it is shown that, as a result of defendant's acts, damages in some amount susceptible of expression in figures resulted. These damages must be proved by facts from which their existence is logically and legally inferable; they cannot be supplied by conjecture. Keogh v. Chicago & N. W. Ry. Company, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.

Here plaintiff likewise finds himself in the same quandry that was his posi-

tion under his claim for relief stemming from the Sherman Act and the Clayton Act. Each requires a proof by the plaintiff of damages proximately resulting from a violation of the law.

I therefore conclude that plaintiff has failed in any wise to show that he is entitled to relief under the Anti-Trust laws (15 U.S.C.A. § 15), or under the Interstate Commerce Act (49 U.S.C.A. § 8).

Accordingly plaintiff is denied relief and his cause of action is dismissed.

Counsel will prepare decree.