Irving D. FRIEDMAN and Sylvia Friedman, on behalf of themselves and in a representative capacity on behalf of all other owners and/or holders of Baltimore and Ohio convertible 4½% income bonds due February 1st, 2010, Plaintiffs,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY and Baltimore and Ohio Railroad Company, Defendants.

Nos. 66 Civ. 1080.

United States District Court
S. D. New York.

Dec. 8, 1966.

Charles J. Fine, New York City, for plaintiffs.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Chesapeake and Ohio Ry. Co. (Carl E. Newton, Robert F. Morten, William P. Moyles, New York City, of counsel).

Alexander & Green, New York City for defendant Baltimore and Ohio R. Co. (Donald M. Dunn, Eugene Z. DuBose, New York City, of counsel).

## OPINION

MacMAHON, District Judge.

Plaintiffs move to strike a defense that they lack standing and for leave to serve an amended complaint. Defendant Baltimore and Ohio Railroad Company ("B&O") cross-moves for summary judgment.

The complaint purports to assert a class action on behalf of plaintiffs and all other holders of defendant B&O's convertible 4½% income bonds, due February 1, 2010, and seeks to recover principal and interest on the bonds. The bonds were issued under an indenture which, *inter alia*, defines and conditions the rights of holders to sue.

The answers of both defendants assert an affirmative defense that plaintiffs lack standing to bring this action because they have failed to perform certain conditions precedent as required by the bonds and the indenture on which plaintiffs' claims are based.

Plaintiffs move under Rule 12(b) of the Federal Rules of Civil Procedure to strike the defense as insufficient in law, and defendant B&O cross-moves under Rule 56(b) of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint. There is no issue as to any material fact relating to the defense. The motions, thus, squarely raise the question of whether the defense is sufficient as a matter of law.

We note at the outset that the bonds are not due until February 1, 2010. Necessarily, therefore, an action to recover the principal does not lie unless the maturity date of the bonds has

been accelerated by a completed event of default. The bonds, on their face, clearly refer to the indenture and expressly notify plaintiffs and all holders that "in case an event of default, as defined in the Indenture, shall occur, the principal of the Bonds may be declared, or may become, due and payable, in the manner and with the effect provided in the Indenture."[1] Plaintiffs are thus forced to rely on the indenture in order to accelerate the time of payment.

That plaintiffs have in fact based their claims on the indenture is abundantly clear on the face of the complaint which plainly invokes the aid of certain provisions of the trust indenture in order to accelerate the maturity of the bonds by the alleged occurrence of events of default. Thus, the complaint alleges four claims against both defendants, and the relief sought in all of them is based upon plaintiffs' allegation that there has been a "merger in fact" of the B&O and the Chesapeake and Ohio Railway Company ("C&O").

Coupling their alleged merger in fact with alleged events of default specified in the indenture, plaintiffs claim that the maturity date of the bonds has been accelerated and that both railroads are now obligated to make payment on them. The alleged events of default upon which plaintiffs rely are the payment of dividends by C&O while there was nonpayment of interest on the B&O income bonds for the years 1961 through 1965, failure to make sinking fund payments, and payments into B&O's retirement annuity plans. The foregoing acts, according to the complaint, constitute "a subversion of plaintiffs' rights under the Indenture and their bonds," causing arrears of interest to become immediately due and an acceleration of maturity of the principal of the B&O income bonds.

Assuming, *arguendo,* that the alleged events of default have in fact occurred, Article Eight of the indenture, nonetheless, invests the trustee under the indenture with all rights of action and provides that no action growing out of any provision of the B&O indenture may be instituted upon the bonds unless the trustee fails to act upon the request of 25% in principal amount of the outstanding bonds and the offer of adequate indemnity to the trustee.

As we have shown, plaintiffs must, and do, invoke the aid of certain provisions of the trust indenture to validate their claim. They must, therefore, plead and prove compliance with the requirements and performance of the conditions defined in the indenture as conditions precedent to the maintenance of this action.[2]

The complaint does not allege that the conditions precedent to suit, required by the trust indenture, have been met, and the fact that they have not been complied with is alleged in the challenged affirmative defense and is shown by undisputed affidavits supporting the motion for summary judgment. The complaint, therefore, fails to state a claim upon which relief can be granted, and there being no genuine issue of any material fact respecting the challenged affirma-

1. The quoted reference is definite and fairly places the bondholder on notice that his rights to sue *before the stated maturity date* are restricted and conditioned by the indenture. Dunham v. Omaha & Council Bluffs St. Ry. Co., 106 F.2d 1, 2 (2d Cir. 1939), cert. denied, 309 U.S. 661, 60 S.Ct. 513, 84 L.Ed. 1009 (1940). It is not merely a general statement of the rights of the holders, as in Cunningham v. Pressed Steel Car Co., 238 App.Div. 624, 265 N.Y.S. 256 (1st Dep't 1933), aff'd without opinion, 263 N.Y. 671, 189 N.E. 750 (1934), a case involving bonds *already matured* upon which plaintiffs rely, nor was it one just to call attention to the character of the security, as in Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45 (1928). Moreover, this particular plaintiff has had knowledge of the indenture's provisions for at least ten years (Exhibit C to moving affidavit of Frederick W. Doolittle, Jr.).

2. Dunham v. Omaha & Council Bluffs St. Ry. Co., supra; Goldstein v. Childs Company, 264 App.Div. 793, 35 N.Y.S.2d 204 (2d Dep't 1942).

tive defense, the motion for summary judgment must be granted,[3] unless there is merit to plaintiffs' remaining contentions which we will now discuss.

Plaintiffs argue that summary judgment is precluded because the Trust Indenture Act of 1939, 15 U.S.C.A. § 77ppp(b), specifically prohibits any limitation on the right of a bondholder to institute suit for either principal or interest without the bondholders' consent. The short answer to this contention is that the bonds which are the subject of this suit were issued pursuant to the authority of the Interstate Commerce Commission, in accordance with § 20a of the Interstate Commerce Act, 49 U.S.C.A. § 20a,[4] and are expressly exempted from the provisions of the Trust Indenture Act, 15 U.S.C.A. § 77ddd(a).[5] Section 3(a)(6) of the Securities Act of 1933, 15 U.S.C.A. § 77c(a)(6), exempts "any security issued by a common or contract carrier, the issuance of which is subject to the provisions of section 20a of Title 49 [Interstate Commerce Act]." [6]

Finally, plaintiffs contend that the challenged defense should not prevail because the trustee has unreasonably refused to sue. This is premised on plaintiffs' demand that the trustee take appropriate action on their claims that there has been a merger in fact and that the declaration and payment of a dividend by C&O constitutes an event of default.

There is no dispute that C&O has paid a dividend, but defendants vigorously deny that there has been a merger in fact or that such payment was a payment by B&O or in any way an event of default under the indenture. Plaintiffs assert that the trustee's failure to sue is so unreasonable that individual bondholders may sue despite the "no action" clause. Plaintiffs cannot so easily escape from the consequences of failing to perform the conditions precedent. The indenture requirement that bondholders may sue where the trustee fails to act, only if requested by the holders of 25% of the principal amount of the outstanding bonds and an offer of adequate indemnity to the trustee, is plainly reasonable.[7]

---

3. Dunham v. Omaha & Council Bluffs St. Ry. Co., supra; Goldstein v. Childs Company, supra; Sutter v. Hudson Coal Company, 259 App.Div. 1053, 21 N.Y.S.2d 40 (2d Dep't 1940); Watson v. Chicago, Rock Island & Pacific R. Co., 169 App. Div. 663, 155 N.Y.S. 808 (1st Dep't 1915); Schallitz v. Starrett Corporation, 82 N.Y.S.2d 89 (Sup.Ct.1948); Van Wezel v. McCord Radiator & Mfg. Co., 20 N.Y. S.2d 91 (City Ct.N.Y.1939); Krause v. Lehigh Valley Coal Co., 172 Misc. 2, 14 N.Y.S.2d 206 (Munic.Ct.N.Y.1939).

4. Baltimore & O. R. Co. Debt Adjustment, 261 I.C.C. 51 (1945); Baltimore & O. R. Co. Securities, 162 I.C.C. 169 (1930).

5. 15 U.S.C.A. § 77ddd(a) provides:
   "The provisions of this subchapter [Trust Indenture Act of 1939] shall not apply to any of the following securities:

   \*     \*     \*     \*     \*

   (4) any security exempted from the provisions of the Securities Act of 1933, by paragraphs (2)–(8), or (11) of section 77c(a) of this title [Securities Act of 1933] \* \* \*."

Section 77c(a)(6) exempts "any security issued by a common or contract carrier, the issuance of which is subject to the provisions of section 20a of Title 49 [Interstate Commerce Act]."

6. See 2 Loss, Securities Regulation 726 (2d ed. 1961); Dabney v. Alleghany Corporation, 164 F.Supp. 28, 30 (S.D.N.Y. 1958).

7. "These restrictions place positive limitations on the rights of every bondholder which cannot at his option be ignored. They are both reasonable and salutary \* \* \* [citations]. The reasons for the rule are stated by us in Central States Life Ins. Co. v. Koplar Co., supra, as follows [8 Cir., 80 F.2d 754, 758]:
   'The reason for the rule is not far to seek. If in a mortgage securing thousands of bonds every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable.'" Quirke v. St. Louis-San Francisco Ry. Co., 277 F.2d 705, 709 (8th Cir.), cert. denied, 363 U.S. 845, 80 S.Ct. 1615, 4 L. Ed.2d 1728 (1960).

Plaintiffs' whole case is built upon the claim of a "merger in fact," predicated essentially on C&O's ownership of 90% of B&O's stock, the pooling of equipment, and the coordinated use of facilities and personnel. In approving C&O's acquisition of control of the B&O, the I.C.C. expressly recognized that the transaction was not a merger, and, noting that B&O's very existence was threatened unless its operating expenses were reduced and its earnings increased, found that:

"Under affiliation C & O is willing and can provide the financial assistance needed to restore the B & O's properties to essential standards. This is not a temporary palliative but an effort of the railroads themselves to work out their long-range problems. Through the use of joint facilities and personnel and the pooling of equipment, substantial cost reductions and savings can be effected. Further, the legitimate interests of B & O's creditors and equity holders will be served by C & O control. As a result of the affiliation, B & O will eventually become a stronger railroad and the efficiency and economy of its operations will be increased. Strengthened as a result of the control, B & O's ability to meet adequately the needs of commerce and of the national defense will be enhanced. These take on added significance when we view the large industrial and population centers served by the B & O in 13 States and the District of Columbia." Chesapeake & O. Ry. Co. Control, 317 I.C.C. 261, 291 (1962).

■■ Plaintiffs' claim of a "merger in fact" borders on the frivolous for it is predicated on semantics. Mere labels, however, cannot alter the fact that the I.C.C. has approved the very transaction and acts which form the basis of plaintiffs' claim.[8] Moreover, railroads may not merge,[9] nor may one railroad assume the obligations of another without I.C.C. approval.[10] Surely, under the circumstances, the trustee's insistence on a request by the prescribed proportion of the bondholders and adequate indemnity before undertaking litigation of the complexity, magnitude, expense, and uncertainty inherent in plaintiffs' tenuous claim is clearly reasonable.

We hold, therefore, that the challenged affirmative defense is sufficient to bar the action as a matter of law.

We turn to plaintiffs' motion to amend their complaint to assert three additional alternative claims and to amend the title

8. Apparently because it is unnecessary to the motion, neither side raises any question concerning either primary jurisdiction of the I.C.C. or exhaustion of remedies. Although disguised in the semantics of a *de facto* merger, plaintiffs' claim is really a collateral challenge to the I.C.C.'s approval of the transaction and acts upon which the complaint is based. 49 U.S.C.A. § 5(2) (4) (5) (7); Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); Gilbertville Trucking Co. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); United States v. Manufacturers Hanover Trust Co., 240 F.Supp. 867 (S.D.N.Y.1965); Chicago South Shore & South Bend Railroad v. Monon Railroad, 235 F.Supp. 984 (N.D.Ill.1964) (and cases there cited).

New York, C. & St. L. R. Co. v. Frank, 314 U.S. 360, 62 S.Ct. 258, 86 L.Ed. 277 (1941), upon which plaintiffs rely, is not only distinguishable but gives controlling significance to the I.C.C.'s views. That case involved long recognition and acceptance by the I.C.C. of a *de jure* consolidation under a New York statute which provided that all debts of the constituent companies "shall thenceforth attach to such new * * * corporation, and be enforceable against it and its property to the same extent as if incurred or contracted by it." N.Y. Railroad Law, McKinney's Consol.Laws c. 49, § 143. Failure to obtain explicit I.C.C. approval for the consolidation was, therefore, no defense to an action on the securities.

9. 49 U.S.C.A. §§ 5, 5(2) (a), 5(4).

10. 49 U.S.C.A. § 20a(2). "It shall be unlawful for any carrier * * * to assume any obligation * * * in respect of the securities of any other person, natural or artificial * * * unless and until * * * the commission by order authorizes such * * * assumption."

of the action as to the proposed first alternative claim to include the directors, officers, attorneys, and agents of the carriers as defendants.

All three alternative claims asserted in the proposed amended complaint are unique, if not specious. All are predicated on the hypothesis that plaintiffs prove upon a trial that there has been a merger in fact, which as a matter of law effected an assumption of B&O's bond obligations by C&O, but that plaintiffs failed to recover on their original complaint because such an assumption is unlawful and void since it was not authorized by the I.C.C. Thus, the first claim seeks to visit liability upon the directors, etc. and the carriers on the theory that the directors, etc., are jointly and severally liable with the carriers for principal and interest on the bonds under § 20a (11) of the Interstate Commerce Act for causing a merger in fact which effected a void assumption of B&O's bond obligations by C&O because it was not authorized by the I.C.C. as required by 49 U.S.C.A. § 20a(2). The proposed second and third alternative claims seek the same recovery plus counsel fees from B &O and C&O under 49 U.S.C.A. § 8 for a violation of the Interstate Commerce Act by reason of C&O's assumption of B&O's bond obligations via the merger in fact without obtaining formal approval of the I.C.C., as required by 49 U.S.C.A. § 20a(2).

Section 20a(11) provides, in substance, that any security issued or assumed without, or contrary to, the authorization of the Commission shall be void. It makes the carriers, directors, and officers who participate in such unauthorized issue or assumption liable for the damage sustained by any person who acquired the void security "for value and in good faith and without notice that the issue or assumption is void." [11]

Plaintiffs' proposed first additional claim does not allege that plaintiffs acquired void securities, nor does it allege that plaintiffs acquired their securities *after* the alleged merger in fact, for value, in good faith, and without notice that the alleged assumption via merger was void. Thus, there is no allegation of an essential element required under § 20a(11) of the Act—the good faith purchase of B&O's income bonds in reliance upon the credit of the alleged merged corporation. Plaintiffs, thus, fail to allege facts showing that a violation of the Act was the proximate cause of the damages sought. The proposed first alternative claim, therefore, fails to allege a claim upon which relief can be granted. It necessarily follows that no claim is asserted against the proposed individual defendants under § 20a(11) of the Act.

Section 8 of the Interstate Commerce Act provides, in substance, that any carrier which violates the Interstate Commerce Act by acts of commission or omission "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation * * * together with a reasonable counsel or attorney's fee * * *."

Assuming, despite I.C.C. approval of the challenged transaction and acts, that there has been a *de facto* merger, that C&O thereby assumed B&O's debt obligations, and that the carriers violated 49 U.S.C.A. §§ 5 and 20a(2) of the Act by failing to obtain I.C.C. approval, the proposed second and third alternative claims are still insufficient. It must appear that the damages sought—failure to recover interest and principal—arise from the violation of some provision of the Act itself.[12]

The proposed amended complaint alleges no facts showing that the damages

11. 49 U.S.C.A. § 20a(11); M-K-T. R. Co. v. Mars, 278 U.S. 258, 260, 49 S.Ct. 103, 73 L.Ed. 316 (1929).

12. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 408–409, 62 S.Ct. 659, 86 L.Ed. 914 (1942); Pennsylvania R. Co. v. International Coal Mining Co., 230 U. S. 184, 203, 33 S.Ct. 893, 57 L.Ed. 1446 (1913): Arnold v. Louisville and Nashville R. Co., 180 F.Supp. 429, 434 (M.D. Tenn.1960), aff'd sub nom. Batts v. Louisville and Nashville R. Co., 316 F.2d 22 (6th Cir. 1963).

734

sought are causally related to the alleged violations. Surely, quite apart from whether we may second guess the I.C.C.'s approval of the joint activities of these carriers,[13] we cannot speculate what the I.C.C. might do if asked to approve a *de jure* merger or assumption.[14] Nor can we guess what affect approval or disapproval would have on the payment of interest or principal on the bonds. Nor can we perceive any remote connection, much less causal relationship, between alleged violation of the Act and plaintiffs' failure to recover interest or principal under their original complaint. On the contrary, we dismiss the original complaint because plaintiffs have no standing to sue, not because they have acquired void obligations or because C&O assumed B &O's bond obligations contrary to law. Giving the proposed amended complaint the most favorable inferences to be drawn, and even assuming, contrary to the provisions and intent of the indenture, that plaintiffs have standing to sue for the claims asserted in the proposed amended complaint, the proffered pleading contains nothing to show that plaintiffs have suffered any injury or sustained damages *in consequence* of any violation of the Interstate Commerce Act, as the statute requires.

Although amendments are freely allowed under Rule 15(a) of the Federal Rules of Civil Procedure, they are not allowed where, as here, a party seeks to assert a claim that lacks merit.[15]

Accordingly, plaintiffs' motion to strike the second affirmative defense asserted by both defendants is denied. The cross-motion by B&O for summary judgment is granted in favor of both defendants. Plaintiffs' motion to amend its complaint and to change the title of the action to include the directors, etc., is likewise denied. There being no just

reason for delay, the Clerk of the Court is hereby directed to enter judgment in favor of the defendants.

It is so ordered. No further order is necessary.

13. New York Dock Ry. v. Pennsylvania R. Co., 1 F.Supp. 20, 21 (E.D.Pa.1932), aff'd. 62 F.2d 1010 (3d Cir.), cert. denied, 289 U.S. 750, 53 S.Ct. 694, 77 L.Ed. 1495 (1933).

14. Goldsmith v. St. Louis-San Francisco Ry. Co., 201 F.Supp. 867, 870 (W.D.N.C. 1962).

15. Johnson v. Partrederiet Brovigtank, 202 F.Supp. 859, 867 (S.D.N.Y.1962).