SYLVIA FRIEDMAN, Individually and on Behalf of All Other Holders of Airlift International, Inc., Debentures, Appellant, v. AIRLIFT INTERNATIONAL, INC., Respondent.

First Department, May 23, 1974.

*Leonard A. Drexler* for appellant.

*Geoffrey M. Kalmus* of counsel (*Charlotte M. Fishman* with him on the brief; *Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll*, attorneys), for respondent.

STEUER, J. Plaintiff is the owner and holder of some $32,000 face value of debenture bonds issued by defendant, payable in 1987 and bearing interest at the rate of 5.75% per annum payable semiannually. Defendant defaulted in the payment of five semiannual interest payments and this suit is for the interest in default. While the complaint states it is a representative action and plaintiff is suing on behalf of all other debenture holders, this phase of the complaint has not been advanced in the briefs nor in the arguments made at Special Term nor in this court, and the action is deemed to be solely on behalf of plaintiff individually.

The defendant concedes the issuance of the bonds and the default in interest payments. It further does not contest that plaintiff is the beneficial owner of the bonds. It has pleaded several defenses, two of which it relies on. The first defense is that the text of the bond contains several references to the indenture and that the indenture provides that no suit for interest can be brought until holders of at least 25% of the outstanding debentures have demanded that the trustee bring suit, have offered to indemnify the trustee for its cost and expenses, and the trustee has failed to bring suit for 60 days.

Restrictions against suit in an indenture are not effective unless the face of the bond gives adequate notice of the restriction (*Cunningham* v. *Pressed Steel Car Co.*, 238 App. Div. 624, affd. 263 N. Y. 671). While the text of the bond, including the designedly almost illegible small print on the back of the bond, contains numerous references to the indenture, only two of these have any reference at all to payment of principal or interest at maturity. The first is that " the interest payable hereon " is " subject to certain exceptions provided in the Indenture." The other is reference to the indenture " for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Debentures." Neither of those clauses affects the obligation to pay principal or interest on maturity. A reference to

another document cannot contradict the promise to pay unless the exception is stated specifically. The law is clearly and comprehensively set out in *Cunningham* (*supra*). There are really two distinct agreements, one embraced in the debenture bond and the other in the indenture. The indenture provides certain rights of collection in the event of certain contingencies and also sets up procedural limitations on the enforcement of those rights. The bond itself is intended to be a negotiable instrument. Any limitation on the obligation to pay at maturity appearing on its face would render it non-negotiable. It would appear that defendant has circulated its negotiable promises to pay and now seeks to deny their negotiability. As a matter of law the references in the bond to the indenture do not accomplish this.

The cases cited in opposition fall into two categories — instances where the limitation on the obligation to pay was clearly expressed in the bond itself, and cases where the bondholder sought not only payment but a collection right provided in the indenture. These decisions have no bearing on the present issue.

The second defense relied upon is that these bonds are registered in the name of a nominee, not the plaintiff herself. In view of the fact that defendant does not dispute that plaintiff is the beneficial owner and holder of the bonds, this fact is of no significance. True it is that defendant would be protected by the terms of the bond if it paid the nominee. But that is the sole effect of the term.

The order entered November 13, 1973, in New York County (AMSTERDAM, J.) denying plaintiff's motion for summary judgment and granting defendant's cross motion for summary judgment should be reversed on the law and plaintiff's motion granted to the extent of granting judgment to plaintiff for $3,700 and interest, without costs.

Settle order on notice.

LANE, J. (dissenting). Sylvia Friedman (Friedman) sued in her own behalf and purportedly on behalf of others similarly situated in order to recover interest due on a class of corporate debentures issued by the defendant, Airlift International, Inc. (Airlift). The debentures themselves will mature in 1987; however, the terms printed on the face of the debentures provide for semiannual payment of interest which payments are presently in default.

The indorsement on the face of the debenture states that interest is payable to the holder in whose name the debenture

is registered, " subject to certain exceptions provided in the Indenture referred to on the reverse hereof."

The reverse side of the debenture refers to the trust indenture no less than 29 times.

Certain specific clauses written on the reverse side of each debenture must be quoted *in extenso* in order to emphasize that fair notice of restrictions was given to the debenture holders. One provision states:

" This Debenture is one of a duly authorized issue of Debentures of the Company * * * all issued or to be issued under and pursuant to an indenture dated as of June 15, 1967 (herein called the ' Indenture '), duly executed and delivered by the Company to The Chase Manhattan Bank (National Association), Trustee (herein called the ' Trustee '), *to which indenture and all indentures supplemental thereto reference is hereby made, for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Debentures* " (emphasis added).

In anticipation of the possibility of default, another clause further provides that: " In case an Event of Default, *as defined in the Indenture,* shall have occurred and be continuing, the principal hereof may be declared and upon such declaration shall become, due and payable, in the manner, with the effect and *subject to the conditions provided in the Indenture* " (emphasis added).

The trust indenture itself at paragraph 9.04 specifically outlines the procedure to be followed as a condition precedent to initiation of suit. The prerequisites to suit are that:

1. The trustee be given written notice of default;

2. Holders of a minimum of 25% in principal amount of outstanding debentures must make written demand of the trustee to institute suit;

3. The trustee must be offered a reasonable indemnity for costs and liability to be incurred; and

4. The trustee must fail to institute action for 60 days after notice given.

The complaint framed by Friedman does not allege that such conditions precedent have been met, and the position taken by Friedman is that such conditions need not be met in a suit of this type. Special Term dismissed the complaint and I would affirm.

The clause containing conditions precedent, as above noted, is more commonly known as a "no-action " clause. Its use has been approved by statute (U. S. Code, tit. 15, § 77ppp, subd.

[a]), and recognition of the salutary effect of such a clause is time-honored (see, e.g., *Batchelder* v. *Council Grove Water Co.*, 131 N. Y. 42 [1892]; *Watson* v. *Chicago, Rock Is. & Pacific R.R. Co.*, 90 Misc. 388, affd. 169 App. Div. 663 [1st Dept., 1915]).

*Cunningham* v. *Pressed Steel Car Co.* (238 App. Div. 624, affd. without opn. 263 N. Y. 671), relied upon by the majority, does not mandate a different conclusion. In *Cunningham*, the court was faced with a problem of negotiability and the right of a holder to initiate suit after the bonds had matured.

On the face of the *Cunningham* bond the legend stated (pp. 624–625) that the defendant " ' promises to pay to the bearer hereof * * * on January 1, 1933, the sum of One Thousand ($1,000.00) Dollars, in gold coin of the United States of America * * * and to pay interest thereon from January 1, 1923, at the rate of five (5%) per centum per annum, payable in like gold coin, semi-annually, on the first day of January and the first day of July, but only upon presentation and surrender of the annexed coupons for such interest as they severally mature.' "

The only reference to the underlying trust indenture stated (p. 625) that: " ' This bond is one of an issue of bonds aggregating Six Million ($6,000,000.00) Dollars, in denominations of $1,000.00 and $500.00, all of like date and of like tenor except as to denomination, all of which bonds have been issued under and are equally secured by an Indenture dated December 30, 1922, between the Company and The New York Trust Company as Trustee, *to which Indenture reference is hereby made for a statement of the rights of the holders of said bonds* ' " (emphasis added).

The court in *Cunningham*, therefore, was presented with a negotiable instrument containing a clear, unconditional promise to pay the principal amount at maturity.

One cannot quarrel with the legal proposition that a bond containing an unconditional promise to pay is freely negotiable and not subject to collateral conditions imposed in a trust indenture. This is the teaching of cases precedent to *Cunningham* (see, e.g., *Hibbs* v. *Brown*, 190 N. Y. 167; *Enoch* v. *Brandon*, 249 N. Y. 263), as well as cases subsequent (see, e.g., *Continental Cas. Co.* v. *Aetna Cas. & Sur. Co.*, 251 App. Div. 467; *Medwin* v. *11 West 42nd St.*, 261 App. Div. 721).

However, that rule is not in conflict with the conclusion to be reached in the case at bar. As mentioned initially, the debenture in question alludes to the trust indenture no less than 29 times. Significantly, on the issues of payment of interest or principal, accelerated or otherwise, there is a specific

caveat referring the holder to the limitations provided in the trust indenture (see excerpts quoted, *supra*).

In such a situation, failure to abide by the strictures imposed is a bar to initiating suit (*Friedman* v. *Chesapeake & Ohio Ry. Co.*, 395 F. 2d 663 [2d Cir.], cert. den. 393 U. S. 1016; *Dunham* v. *Omaha & Council Bluffs St. Ry. Co.*, 106 F. 2d 1 [2d Cir.], cert. den. 309 U. S. 661; *Greene* v. *New York United Hotels*, 236 App. Div. 647, affd. without opn. 261 N. Y. 698; *Sass* v. *New Yorker Towers*, 23 A D 2d 105 [1st Dept.]).

A mere reading, therefore, of the debentures themselves places a holder on notice of the limitations to payment mandating further inquiry by such holder (cf. *Sass* v. *New Yorker Towers, supra*, p. 107).

Neither ambiguity nor inadequate notice can therefore be ascribed to these debentures.

A corporation should not be compelled to notify debenture holders of every conceivable limitation of suit or recovery without allowing incorporation by reference of the underlying trust indenture. Such a requirement would unduly burden an issuing corporation and restrict the use of this type of commercial paper.

Finally, I must note that the majority is in error in stating that a limitation on payment appearing on the face of the debenture would render it non-negotiable.

A major criterion in defining negotiability of commercial paper under article 3 of the Uniform Commercial Code is that the check or note involved contain an unconditional promise or order to pay a sum certain in money and no other promise (Uniform Commercial Code, § 3–104, subd. [1], par. [b]).

However, investment securities, such as debentures, are not included within the rules and restrictions of article 3 (Uniform Commercial Code, § 3–103, subd. [1]) but are, rather, controlled by article 8 of the Uniform Commercial Code (see Uniform Commercial Code, § 8–102) and are negotiable (Uniform Commercial Code, § 8–105, subd. [1]).

Negotiability of securities under article 8 is not hampered by limitations noted conspicuously on the face of the securities, and such limitations merely render negotiation subject to the conditions noted (Uniform Commercial Code, §§ 8–301, subd. [3], 8–204).

Accordingly, the order, entered November 13, 1973, granting defendant's cross motion to dismiss the complaint and denying plaintiff's motion for summary judgment, should be affirmed.

MARKEWICH, J. P., MURPHY and LUPIANO, JJ., concur with STEUER, J.; LANE, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on November 13, 1973, reversed, on the law, without costs and without disbursements, plaintiff's motion granted to the extent of granting judgment to plaintiff for $3,700 and interest, and defendant's cross motion denied.

Settle order on notice.